**Todd Eric PORTERFIELD, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–7899.

Court of Appeals of Alaska.

May 2, 2003.

---

**5.** AS 11.46.315(b)(1)-(2).

**6.** Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 105, 1978 Senate Journal 1399.

Margi A. Mock, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Kenneth J. Diemer, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

A jury convicted Todd Eric Porterfield of first-degree murder and first-degree arson[1] for starting a fire that killed Walter Roll. At the trial, the superior court admitted recordings of statements by Porterfield's wife, Michele S. Porterfield, to a third party and the third party's testimony describing Mrs. Porterfield's unrecorded statement about the fire

---

1. AS 11.41.100(a) and AS 11.46.400(a), respectively.

and homicide; those statements implicated both Mr. and Mrs. Porterfield in the arson and homicide. Porterfield argues that the court abused its discretion when it admitted this evidence.

Based on our review of the record, we conclude that the superior court did not abuse its discretion when it admitted evidence of Mrs. Porterfield's statements as declarations against interest. We also conclude that admission of those statements did not violate Porterfield's confrontation rights.

### Background facts

On March 21, 1999, a fire in Delta Junction killed Walter Roll. Roll suffered burns to his upper body, but died of smoke inhalation. The initial investigation found no indication that the fire was intentionally set. During the investigation, Porterfield was arrested on a warrant from Washington State. Soon after the fire, Diana Knight contacted the Alaska State Troopers. Knight reported that Porterfield's wife told her that the Porterfields started the fire that killed Roll.

The police obtained a *Glass* warrant [2] and secretly recorded conversations between Knight and Mrs. Porterfield. After recording Mrs. Porterfield's statements, the State arranged to have Porterfield released under the guise that Knight and her husband arranged to post bail. On April 2, the Knights picked Porterfield up in Fairbanks in a van wired for audio surveillance and drove toward Delta.

During the drive, Porterfield admitted to the Knights that he was responsible for the arson and Roll's homicide; the police recorded this conversation pursuant to a *Glass* warrant as well. The troopers stopped the van and arrested Todd. The troopers advised Porterfield of his rights, and Porterfield admitted responsibility for the arson and Roll's death.

The grand jury indicted Porterfield and his wife for first-degree murder, second-degree murder,[3] and first-degree arson. The superior court severed the defendants' trials.

Following several pre-trial discussions about the admissibility of Mrs. Porterfield's statements, Superior Court Judge Charles R. Pengilly admitted edited versions of Mrs. Porterfield's taped statements and Knight testified about Mrs. Porterfield's statement to her the day after the fire. The court also admitted Porterfield's statements to Knight during the drive and his statement to the troopers just after his arrest. The jury found Porterfield guilty of first-degree murder and first-degree arson.

### Were Mrs. Porterfield's statements admissible as statements against interest?

The State offered Mrs. Porterfield's statements to Knight as statements against interest under Evidence Rule 804(b)(3). Alaska Rule of Evidence 804(b)(3) allows the introduction into evidence of an unavailable declarant's statement which, when it was made, "so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Judge Pengilly found that Mrs. Porterfield was unavailable. Porterfield has not challenged that ruling.

We examined Evidence Rule 804(b)(3) in *Linton v. State.*[4] Linton's father told his domestic partner that Linton murdered Linton's wife and admitted that he helped Linton conceal the wife's body.[5] After the father died, his domestic partner contacted the police, and the police arranged for him to record some "arguably inculpatory statements" by the defendant.[6]

At trial, Linton argued that because the only crime for which his father might have

---

**2.** *See State v. Glass*, 583 P.2d 872 (Alaska 1978), *on reh'g*, 596 P.2d 10 (Alaska 1979) (holding that the state constitution requires police to obtain judicial authorization before secretly recording a person's private conversations).

**3.** AS 11.41.110(a).

**4.** 880 P.2d 123 (Alaska App.1994), *aff'd on reh'g*, 901 P.2d 439 (Alaska App.1995), [hereinafter *Linton II*].

**5.** *Id.* at 125.

**6.** *Id.* at 125–26.

been guilty was tampering with evidence,[7] and because the statute of limitations had tolled before his father made the inculpatory statements, the statements were not against his father's penal interest and, therefore, were inadmissible.[8] Whether or not the statute of limitations had run, we observed that the surrounding circumstances did not indicate that the father was aware of the statute of limitations.[9] Even if Linton's father had known about the statute of limitations, we reasoned that it was doubtful he would have "felt free" to tell people that he helped dispose of the body of a murder victim.[10] We declared that the "proper focus" of the inquiry into the surrounding circumstances is "the motivations of the out-of-court declarant." [11]

In this case, it appears that Mrs. Porterfield had less reason to believe that her statement would not be reported to the authorities than did Linton's father. Linton's father revealed his conduct to his long-term domestic partner; Mrs. Porterfield admitted her misconduct to Knight, a recent acquaintance who Porterfield said could be trusted. As was the case in *Linton*, Mrs. Porterfield had no apparent reason to fabricate a claim against her husband when she spoke to Knight, and she had no reason to believe that the police suspected that she was involved in the arson and the resulting homicide when they tape recorded her statements.[12] And Mrs. Porterfield's statements were made within a few days of the arson so there was little likelihood that memory loss or confusion could be attributed to the passage of time.

After we issued the first *Linton* opinion, the United States Supreme Court issued its opinion in *Williamson v. United States*.[13] *Williamson* construed Federal Rule of Evidence 804(b)(3) to require that a declarant's non-inculpatory statements be severed before a declarant's statement is admitted under that exception to the hearsay rule:

> In our view, the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory. The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else.[14]

However, the Court cautioned that the inculpatory nature of such severed statements "can only be determined by viewing [them] in context. Even statements that are on their face neutral may actually be against the declarant's interest[.]" [15]

We granted rehearing in *Linton* in light of *Williamson*, but reaffirmed the admission of the statement against interest.[16] We noted that the severability of non-self-inculpatory statements from an overall inculpatory narrative was not a new concept and reasoned that Linton's trial attorney may have decided, tactically, not to argue severance rather than having failed to recognize the concept.[17] Thus, we concluded that Linton had waived the issue.[18]

We also reasoned that the statements appeared to be admissible even if subjected to the severability requirement established by *Williamson*.[19] We observed that the individual statements of Linton's father, when viewed in the context of his entire narrative,

7. AS 11.56.610.

8. *Linton*, 880 P.2d at 127.

9. *Id.*

10. *Id.*

11. *Id.* at 128 n. 5.

12. *See id.* at 128.

13. 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994).

14. *Id.* at 600–01, 114 S.Ct. at 2435.

15. *Id.* at 603, 114 S.Ct. at 2436–37.

16. *Linton II*, 901 P.2d at 441–42.

17. *Id.* at 442.

18. *Id.* at 441.

19. *Id.* at 442.

were self-inculpatory.[20] Thus, we concluded that there was no need to decide whether *Williamson* should guide our interpretation of Alaska Rule of Evidence 804(b)(3).

Most states addressing the issue have followed or approved of the *Williamson* analysis of severability when interpreting their evidence rules; [21] a few have not.[22]

Porterfield raised the severability question below and argued that statements by Mrs. Porterfield that did not directly inculpate her but only inculpated Porterfield had to be severed under a *Williamson* analysis. Ultimately, Judge Pengilly did not order severance of any of the statements suggested by Porterfield. Judge Pengilly analyzed Mrs. Porterfield's statements in context and determined that they were admissible as statements against interest because the statements implicating Porterfield "establish her complicity in [Porterfield's] crime[.]"

Although *Williamson* is followed by a large majority of the states that have addressed the question, this case does not require us to decide whether we should follow *Williamson* when applying Evidence Rule 804(b)(3) because direct application of that rule would not change the result in this case.

Judge Pengilly found that the statements by Mrs. Porterfield that were offered by the State established her accomplice liability for Porterfield's conduct. The record supports that finding. The evidence showed that Mrs. Porterfield told Knight "how they killed Mr. Roll" when Knight spoke with her shortly after the fire. Knight contacted the troopers, agreed to help, and wore an electronic device to record more conversations with

Mrs. Porterfield. In the portions of the subsequent tape-recorded conversations offered by the State, Mrs. Porterfield said that Porterfield was the person who actually set the fire, but she admitted that they planned the event the night before; they both kept Roll entertained and made sure he was intoxicated and incapacitated before starting the fire.

In the context of all her statements, whenever Mrs. Porterfield described Porterfield's individual actions, that description was against her penal interest because the description established her accomplice liability for Porterfield's conduct. Thus, applying Evidence Rule 804(b)(3), Judge Pengilly could reasonably find that viewing Mrs. Porterfield's statements in context, the statements "so far tended to subject [her] to ... criminal liability ... that a reasonable person in [her] position would not have made the statement unless believing it to be true." Thus, Judge Pengilly did not abuse his discretion when he concluded that Mrs. Porterfield's statements were declarations against interest under Evidence Rule 804(b)(3).

*Were Porterfield's confrontation rights satisfied?*

■ Although evidence may be admissible under an exception to the hearsay rule, that evidence must still be excluded if a defendant's confrontation rights are violated.[23] Under the confrontation clause, a hearsay statement is admissible against a defendant: "only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In

---

**20.** *Id.*

**21.** *See State v. Soto–Fong,* 187 Ariz. 186, 928 P.2d 610 (1996); *People v. Duarte,* 24 Cal.4th 603, 101 Cal.Rptr.2d 701, 12 P.3d 1110 (2000); *State v. Schiappa,* 248 Conn. 132, 728 A.2d 466 (1999); *Smith v. State,* 647 A.2d 1083 (Del.1994); *Brooks v. State,* 787 So.2d 765 (Fla.2001); *Gabow v. Commonwealth,* 34 S.W.3d 63 (Ky.2000); *State v. Lucky,* 755 So.2d 845 (La.1999); *State v. Matusky,* 343 Md. 467, 682 A.2d 694 (1996); *State v. Dukes,* 544 N.W.2d 13 (Minn.1996); *Williams v. State,* 667 So.2d 15 (Miss.1996); *State v. Sheets,* 260 Neb. 325, 618 N.W.2d 117 (2000); *State v. Benavidez,* 128 N.M. 261, 992 P.2d 274 (1999); *People v. James,* 93 N.Y.2d 620, 695 N.Y.S.2d 715, 717 N.E.2d 1052 (1999);

*Commonwealth v. Robins,* 571 Pa. 248, 812 A.2d 514 (2002); *State v. Pacheco,* 763 A.2d 971 (R.I. 2001); *State v. Fuller,* 337 S.C. 236, 523 S.E.2d 168 (1999); *State v. Roberts,* 142 Wash.2d 471, 14 P.3d 713 (2000); *State v. Mason,* 194 W.Va. 221, 460 S.E.2d 36 (1995); *Johnson v. State,* 930 P.2d 358 (Wyo.1996).

**22.** *See People v. Newton,* 966 P.2d 563 (Colo. 1998); *State v. Hills,* 264 Kan. 437, 957 P.2d 496 (1998); *State v. Sonthikoummane,* 145 N.H. 316, 769 A.2d 330 (2000); *Chandler v. Commonwealth,* 249 Va. 270, 455 S.E.2d 219 (1995).

**23.** *See* U.S. Const. Amend. VI; Alaska Const. art. I, § 11.

other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." [24]

When we decided *Linton,* we recognized the debate whether a declaration against interest implicating a third party was a firmly rooted hearsay exception or not.[25] We decided that the "prudent choice" was to require that such statements have "particularized guarantees of trustworthiness" in order to satisfy confrontation clause concerns.[26] This requirement foreshadowed the United States Supreme Court's plurality opinion in *Lilly v. Virginia*[27] that for confrontation clause purposes, a declaration against penal interest implicating a third party is not a firmly rooted hearsay exception.[28]

█ When deciding whether particularized guarantees of trustworthiness exist, a court looks at the totality of the circumstances, but "the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." [29] Judge Pengilly discussed *Linton* and *Lilly* and decided that admission of Mrs. Porterfield's statements did not violate the confrontation clause. Judge Pengilly found that the circumstances did not suggest that Mrs. Porterfield had a motivation to shift blame when she made the statements, or a reason to anticipate that the statements would be shared with law enforcement. Mrs. Porterfield's initial statement to Knight shortly after the fire was unprompted. Mrs. Porterfield informed Knight that Porterfield advised her that she could trust both Mr. and Mrs. Knight. Mrs. Porterfield then disclosed to Knight that she and Porterfield had killed Roll by starting the fire. In that first conversation and in the following taped conversations, there was no apparent reason for Mrs.

Porterfield to fabricate her admissions. In all her statements, she described a very recent occurrence. Even though Mrs. Porterfield's account implicated Porterfield in the arson and murder, Judge Pengilly found that there was no indication that Mrs. Porterfield minimized her own role or tried to shift blame to Porterfield. Nothing in the circumstances of the statements provides a reason why Mrs. Porterfield would falsely implicate her husband. Significantly, Mrs. Porterfield had no reason to believe that her statements to Knight would curry any favor with the police or the State because Judge Pengilly found that she had no reason to anticipate the statements would be relayed to law enforcement.

Also, Knight was subject to cross-examination by Porterfield when she testified at trial about Mrs. Porterfield's statement to her just after the fire. Mrs. Porterfield's other statements offered by the State were tape-recorded and the jury heard the content of those statements when they were played.

Considering all these circumstances, we agree with Judge Pengilly's conclusion that Mrs. Porterfield's statements had the particularized guarantees of trustworthiness that satisfied Porterfield's confrontation rights.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

24. *Linton,* 880 P.2d at 129 (quoting *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980)).

25. *Id.* at 129.

26. *Id.*

27. 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999).

28. *Id.* at 134, 119 S.Ct at 1899.

29. *Linton,* 880 P.2d at 129 (quoting *Idaho v. Wright,* 497 U.S. 805, 819, 110 S.Ct. 3139, 3148, 111 L.Ed.2d 638 (1990)).