**UNITED STATES of America,**
**Appellee,**

v.

**James SAGET, also known as Hesh,**
**Defendant–Appellant.**

No. 03–1200.

United States Court of Appeals,
Second Circuit.

Argued: March 15, 2004.

Decided: July 28, 2004.

Marilyn S. Reader, Larchmont, NY, for defendant-appellant.

Anthony S. Barkow, Assistant United States Attorney for the Southern District of New York (David N. Kelley, United States Attorney for the Southern District of New York, on the brief; Marc L. Mukasey, Assistant United States Attorney, of counsel), New York, NY, for appellee.

Before: SACK, SOTOMAYOR, and RAGGI, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Defendant-appellant James Saget appeals from a judgment of conviction entered on April 1, 2003 in the United States District Court for the Southern District of New York (Kaplan, J.), following a jury trial. Saget was convicted of one count of conspiracy, in violation of 18 U.S.C. § 371, to traffic in firearms in violation of 18 U.S.C. § 922(a)(1)(A) and to make false statements in connection with firearms trafficking in violation of 18 U.S.C. § 922(a)(6), as well as one count of firearms trafficking in violation of 18 U.S.C. § 922(a)(1)(A). On appeal, Saget argues that, *inter alia*, the district court violated his Confrontation Clause rights by allowing the government to introduce into evidence the statements of a separately indicted co-conspirator, Shawn Beckham, who was unavailable to testify at the trial. Saget also argues that the court abused its discretion in determining that Beckham's statements were admissible under the exception to the hearsay rule for statements against the declarant's penal interest, *see* Fed.R.Evid. 804(b)(3). We address these arguments in this opinion and deal with Saget's other challenges to his conviction in a summary order to be later filed.

We hold that the introduction of Beckham's co-conspirator statements against Saget did not violate the Confrontation

Clause because the statements were not testimonial, and therefore did not implicate the *per se* bar on the introduction of out-of-court testimonial statements, absent a prior opportunity for cross-examination, enunciated by *Crawford v. Washington,* —— U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and because Beckham's statements were made under circumstances conferring the indicia of reliability required by *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). We also hold that the district court did not abuse its discretion in admitting the statements as against the declarant's penal interests pursuant to Fed.R.Evid. 804(b)(3).

## BACKGROUND

In June 2002, Saget was indicted for conspiring to traffic in firearms and to make false statements in connection with firearms trafficking, and firearms trafficking. According to the evidence introduced at trial, Saget and his co-conspirator, Shawn Beckham, concocted a scheme in early 2000 to purchase firearms illegally in Pennsylvania and transport them to New York for sale on the black market. Because Saget and Beckham both had criminal records that prohibited them from purchasing firearms, they used straw purchasers—people without criminal records who were paid to make individual gun purchases—to buy guns in Pennsylvania. The straw purchasers were usually, but not always, female exotic dancers. Saget and Beckham would then sell the guns in New York.

In May and June 2001, Beckham engaged in two conversations with a confidential informant ("CI"), a friend whom Beckham thought was interested in joining

the gun-running scheme. During the conversations, Beckham extolled the benefits of the scheme, relaying his and Saget's gun-running practices, profits, and past exploits in a manner that implicated both himself and Saget. Unbeknownst to Beckham, both conversations were recorded by the CI. At Saget's trial,[1] Beckham was unavailable to testify. The government therefore sought to introduce the portions of the taped conversations in which Beckham implicated both himself and Saget, arguing that the statements were against Beckham's penal interest and were admissible under Fed.R.Evid. 804(b)(3). The district court ruled that the statements in which Beckham referred to gun-running activities that he and Saget conducted jointly were admissible as statements against Beckham's penal interest because they implicated Beckham in a conspiracy with Saget. The court also found that the admission of the statements as substantive evidence of Saget's participation in the conspiracy did not violate the Confrontation Clause because the statements bore particularized guarantees of trustworthiness required under *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Saget was subsequently convicted.

Saget now appeals the district court's ruling that Beckham's statements were admissible. He argues that the court committed reversible error in failing to exclude the statements on the ground that they contained insufficient indicia of reliability to satisfy the Confrontation Clause as explicated by *Roberts* and *United States v. Matthews,* 20 F.3d 538 (2d Cir.1994), and that the court improperly admitted many statements that were not actually against Beckham's penal interest, in violation of

---

1. Beckham was arrested in connection with a gun delivery he arranged with the CI and was indicted, separately from Saget, on charges of firearms trafficking and conspiracy to traffic in firearms. He pled guilty before Judge Daniels in the Southern District of New York in September 2001.

Rule 804(b)(3) and *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994).

Subsequent to the filing of this appeal but prior to oral argument, the Supreme Court decided *Crawford*, which substantially alters the Court's existing Confrontation Clause jurisprudence. *Crawford* holds that no prior testimonial statement made by a declarant who does not testify at the trial may be admitted against a defendant unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine him or her. *Crawford*, —— U.S. at ——, 124 S.Ct. at 1369. We ordered supplemental briefing on the issue of whether *Crawford* renders the admission of Beckham's statements about Saget unconstitutional. Saget now argues that Beckham's statements were testimonial within the meaning of *Crawford* and that, because Saget had no opportunity for cross-examination when the statements were made, their admission violated the Confrontation Clause.

## DISCUSSION

### I. *Crawford* and Its Effect on Existing Confrontation Clause Jurisprudence

As an initial matter, we must determine how the Confrontation Clause analysis should proceed in light of *Crawford*. *Crawford* redefines the scope and effect of the Confrontation Clause, substituting a *per se* bar on the admission of out-of-court testimonial statements that were not subject to prior cross-examination for the balancing test that previously delineated the limits of the right to confrontation. This redefinition is premised on the text of the Clause, which states that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The right of confrontation extends only to witnesses, therefore, and *Crawford* re-

defines the Court's Sixth Amendment jurisprudence by holding that the term "witnesses" does not encompass all hearsay declarants. *Crawford*, —— U.S. at ——, 124 S.Ct. at 1364.

Until *Crawford* was decided in March 2004, the scope of a defendant's Confrontation Clause rights was delineated by *Roberts*, which "conditions the admissibility of all hearsay evidence on whether it falls under a firmly rooted hearsay exception or bears particularized guarantees of trustworthiness." *Id.* at 1369 (internal quotation marks omitted). Any out-of-court statement was constitutionally admissible so long as it fell within an exception to the hearsay rule or, if that exception was not firmly rooted, the court found that the statement was likely to be reliable. *See White v. Illinois*, 502 U.S. 346, 366, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (Thomas, J., concurring in part and concurring in the judgment) (noting that the *Roberts* line of cases tended to "constitutionalize the hearsay rule and its exceptions"); *Lilly v. Virginia*, 527 U.S. 116, 140, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (Breyer, J., concurring) ("The Court's effort to tie the Clause so directly to the hearsay rule is of fairly recent vintage ....").

*Crawford* abrogates *Roberts* with respect to prior testimonial statements by holding that such statements may never be introduced against the defendant unless he or she had an opportunity to cross-examine the declarant, regardless of whether that statement falls within a firmly rooted hearsay exception or has particularized guarantees of trustworthiness. *See Crawford*, —— U.S. at ——, ——, 124 S.Ct. at 1370, 1374. It is clear that a court faced with an out-of-court testimonial statement need not perform the *Roberts* reliability analysis, as *Crawford* replaces that analysis with a bright-line rule drawn from the

historical origins of the Confrontation Clause. *See id.* at 1359–63.

*Crawford,* however, leaves somewhat less clear the status of the *Roberts* line of cases insofar as these decisions deal with statements that are not testimonial in nature, however. In discussing the fallibility of the *Roberts* reliability analysis with respect to testimonial statements, the Court leveled several criticisms at the *Roberts* approach that would apply with equal force to its application to nontestimonial statements. *See id.* at 1370 (stating that *Roberts* obscures the fact that the Confrontation Clause prescribes a procedural guarantee that reliability should be determined through cross-examination rather than through other methods); *id.* at 1371 (noting that "[r]eliability is an amorphous, if not entirely subjective, concept" that is subject to judicial manipulation); *id.* at 1373–74 (stating that *Roberts*'s "open-ended balancing test" may often fail to provide "any meaningful protection"). In light of these perceived flaws in the *Roberts* analysis, at least two Justices—including Justice Scalia, who authored the *Crawford* opinion—would completely overrule *Roberts* and hold that the Confrontation Clause places no limits on the admission of nontestimonial hearsay. *See White,* 502 U.S. at 364–66, 112 S.Ct. 736 (Thomas, J., concurring in part and concurring in the judgment, joined by Scalia, J.). Because such statements do not implicate the concerns historically addressed by the right of confrontation, these Justices believe that the *Roberts* analysis unduly confuses what should be a bright-line rule prohibiting only the admission of testimonial hearsay and allowing all other types of statements. *See id.* at 358–59, 364–66, 112 S.Ct. 736; *see also Crawford,* —— U.S. at ——, 124 S.Ct. at 1373 (suggesting that *Roberts* "do[es] violence to" the design of the "categorical constitutional guarantee[ ]" of the Confrontation Clause).

Despite the criticisms that *Crawford* and the *White* concurrence aim at existing Confrontation Clause jurisprudence, *Crawford* leaves the *Roberts* approach untouched with respect to nontestimonial statements. The *Crawford* Court expressly declined to overrule *White,* in which the majority of the Court considered and rejected a conception of the Confrontation Clause that would restrict the admission of testimonial statements but place no constitutional limits on the admission of out-of-court nontestimonial statements. *See Crawford,* —— U.S. at ——, 124 S.Ct. at 1370 ("Although our analysis in this case casts doubt on that holding, we need not definitively resolve whether [*White*] survives our decision today ...."); *see also White,* 502 U.S. at 352–53, 112 S.Ct. 736.

Accordingly, while the continued viability of *Roberts* with respect to nontestimonial statements is somewhat in doubt, we will assume for purposes of this opinion that its reliability analysis continues to apply to control nontestimonial hearsay, and that our precedents applying the *Roberts* analysis to such statements retain their force. This assumption gives effect to the Court's refusal to overrule *White* while erring on the side of providing more protection to defendants in the absence of a definitive ruling from the Supreme Court. Thus, the analysis of whether the admission of Beckham's statements violated the Confrontation Clause begins with the question of whether the statements are testimonial, triggering *Crawford's per se* rule against their admission. If the statements are not testimonial, their admission did not violate the Confrontation Clause so long as the statements fall within a firmly rooted hearsay exception or demonstrate particularized guarantees of trustworthiness. *See Roberts,* 448 U.S. at 66, 100 S.Ct. 2531.

## II. Testimonial Statements Under Crawford

*Crawford* conditions its bar on the admission of prior out-of-court statements that were not subject to cross-examination on whether the statements are "testimonial." This limitation stems from *Crawford's* definition of a witness, as that term is used in the Confrontation Clause, as someone who "bear[s] testimony." *Crawford*, —— U.S. at ——, 124 S.Ct. at 1364 (internal quotation marks omitted). Testimony, in turn, is " '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Id.* (quoting 1 N. Webster, An American Dictionary of the English Language (1828)).

Although the Court declined to "spell out a comprehensive definition of 'testimonial,' " *id.* at 1374, it provided examples of those statements at the core of the definition, including prior testimony at a preliminary hearing, previous trial, or grand jury proceeding, as well as responses made during police interrogations. *See id.* at 1364, 1374. With respect to the last example, the Court observed that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* at 1364. Thus, the types of statements cited by the Court as testimonial share certain characteristics; all involve a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings. *See id.* at 1365 n. 4 (stating that declarant's "recorded statement, knowingly given in response to structured police questioning," was made in an interrogation setting and was therefore testimonial).

By denominating these types of statements as constituting the "core" of the universe of testimonial statements, the Court left open the possibility that the definition of testimony encompasses a broader range of statements. *See id.* at 1371; *see also id.* at 1370 (citing Richard D. Friedman, *Confrontation: The Search for Basic Principles*, 86 Geo. L.J. 1011, 1039–43 (1998) (advocating that any statement made by a declarant who "anticipates that the statement will be used in the prosecution or investigation of a crime" be considered testimony)). *But see White*, 502 U.S. at 364–65, 112 S.Ct. 736 (Thomas, J., concurring in part and concurring in the judgment, joined by Scalia, J.) (stating that only statements contained in "formalized testimonial materials" should be considered testimony, and opining that any broader definition would entail difficult factual determinations). Because the Court declined to delineate a more concrete definition of the outer limits of the concept of testimonial statements, however, it is unclear which of the characteristics listed above are determinative of whether a given statement constitutes testimony. The statements at issue in this case present an example of a situation not falling squarely within any of the *Crawford* examples. Beckham's statements were elicited by an agent of law enforcement officials, but without his knowledge, and not in the context of the structured environment of formal interrogation. The question, therefore, is whether Beckham served as a "witness" who bears testimony within the meaning of the Clause, despite the fact that he was unaware that his statements were being elicited by law enforcement and would potentially be used in a trial.

*Crawford* at least suggests that the determinative factor in determining whether a declarant bears testimony is the declarant's awareness or expectation that his or her statements may later be used at a trial. The opinion lists several formula-

tions of the types of statements that are included in the core class of testimonial statements, such as "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford,* —— U.S. at ——, 124 S.Ct. at 1364 (internal quotation marks omitted). All of these definitions provide that the statement must be such that the declarant reasonably expects that the statement might be used in future judicial proceedings.[2] *See id.* Although the Court did not adopt any one of these formulations, its statement that "[t]hese formulations all share a common nucleus and then define the Clause's coverage at various levels of abstraction around it" suggests that the Court would use the reasonable expectation of the declarant as the anchor of a more concrete definition of testimony. *See also id.* at 1365 n. 4 (noting that declarant's testimonial statement was knowingly given to investigators). If this is the case, then Beckham's statements would not constitute testimony, as it is undisputed that he had no knowledge of the CI's connection to investigators and believed that he was having a casual conversation with a friend and potential co-conspirator.

We need not attempt to articulate a complete definition of testimonial statements in order to hold that Beckham's statements did not constitute testimony, however, because *Crawford* indicates that the specific type of statements at issue here are nontestimonial in nature. The decision cites *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), which involved a co-defendant's unwitting statements to an FBI informant, as an example of a case in which nontestimonial statements were correctly admitted against the defendant without a prior opportunity for cross-examination. *See Crawford,* —— U.S. at ——, 124 S.Ct. at 1368. In *Bourjaily,* the declarant's conversation with a confidential informant, in which he implicated the defendant, was recorded without the declarant's knowledge. *See Bourjaily,* 483 U.S. at 173–74, 107 S.Ct. 2775. The Court held that even though the defendant had no opportunity to cross-examine the declarant at the time that he made the statements and the declarant was unavailable to testify at trial, the admission of the declarant's statements against the defendant did not violate the Confrontation Clause. *See id.* at 182, 107 S.Ct. 2775. *Crawford* approved of this holding, citing it as an example of an earlier case that was "consistent with" the principle that the Clause permits the admission of nontestimonial statements in the absence of a prior opportunity for cross-examination. *Crawford,* —— U.S. at ——, 124 S.Ct. at 1367. Thus, we conclude that a declarant's statements to a confidential informant, whose true status is unknown to the declarant, do not constitute testimony within the meaning of *Crawford.* We therefore conclude that Beckham's statements to the CI were not

---

**2.** Although one of the formulations, taken from Justice Thomas's concurrence in *White,* 502 U.S. at 365, 112 S.Ct. 736, does not explicitly require that the statement have been made with the reasonable expectation that it would be used at a later trial, Justice Thomas's definition of testimonial statements appears to be narrower than that contemplated by *Crawford,* as it includes only "formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions." *Id.*

By definition, a declarant who gives a statement in one of the formalized contexts cited by Justice Thomas must reasonably expect that his or her statement could be used in future proceedings. This definition is, as *Crawford* notes, consistent with the other two formulations, which are explicitly conditioned on the reasonable expectation of the declarant. *See Crawford,* —— U.S. at ——, 124 S.Ct. at 1364.

testimonial, and *Crawford* does not bar their admission against Saget.

### III. Indicia of Reliability Under *Roberts*

■ Because Beckham's statements were not testimonial, the Confrontation Clause does not bar their admission so long as the statements fall within a firmly rooted hearsay exception or contain particularized guarantees of trustworthiness. *See Roberts*, 448 U.S. at 66, 100 S.Ct. 2531. Because we have not yet decided whether the hearsay exception for statements against penal interest is a firmly rooted hearsay exception, *see United States v. Matthews*, 20 F.3d 538, 545 (2d Cir.1994), the district court admitted the statements on the basis of their indicia of reliability. We review the district court's Confrontation Clause analysis *de novo, see United States v. Tropeano*, 252 F.3d 653, 657 (2d Cir.2001). Applying this standard, we give appropriate deference to any factual findings by the district court that may inform the question of reliability. We hold that the statements bear adequate guarantees of trustworthiness.

Under our precedents, Beckham's statements to the CI were made in circumstances that confer adequate indicia of reliability on the statements. In *United States v. Sasso*, 59 F.3d 341 (2d Cir. 1995), we explained that "[a] statement incriminating both the declarant and the defendant may possess adequate reliability if ... the statement was made to a person whom the declarant believes is an ally," and the circumstances indicate that those portions of the statement that inculpate the defendant are no less reliable than the self-inculpatory parts of the statement. *Id.* at 349. Thus, in *Matthews* we concluded that the declarant's statements to his girlfriend were sufficiently reliable to be introduced against

the defendant, given the unofficial setting in which the remarks were made and the declarant's friendly relationship with the listener. *See Matthews*, 20 F.3d at 546. Beckham's statements were made under circumstances almost identical to those at issue in *Matthews*, as Beckham believed that he was speaking with a friend—their conversations involved discussions of personal issues such as child support as well as details of the gun-running scheme—in a private setting. *See also Sasso*, 59 F.3d at 349–50 (finding that declarant's statements to his girlfriend were reliable because they were not made in response to questioning or in a coercive atmosphere). Moreover, because Beckham was describing his and Saget's method of buying and transporting the guns, the majority of his statements were descriptions of acts that he and Saget had jointly committed. Thus, Beckham does not appear to have been attempting to shift criminal culpability from himself to Saget. *See id.* at 350; *United States v. Rahme*, 813 F.2d 31, 36–37 (2d Cir.1987) (finding reliability where declarant's statements implicating the defendant were also self-inculpatory). The statements therefore contained sufficient guarantees of trustworthiness to be introduced against Saget.

Saget contends, however, that *Sasso* and *Matthews* are inapposite here, because Beckham had a motive to exaggerate his statements in order to convince the CI to join him in selling guns. This argument is unavailing. Although the CI asked Beckham fairly detailed questions about the logistics of the gun-running scheme, he never expressed doubt about the veracity of Beckham's statements or misgivings about joining the illegal activity. Moreover, those statements that incriminate Saget, such as the assertions that Beckham and Saget made a profit on the guns, drove them to New York, and used exotic dancers to buy guns, are factual in nature.

Those elements of the statements that Beckham might have exaggerated, such as the amount of money the partners made or the number of guns they purchased at once, are immaterial to Beckham's central assertion, that he and Saget participated in the gun-running scheme. Establishing Saget's participation in the conspiracy was the principal purpose for which the statements were introduced. We therefore conclude that Beckham's statements bore sufficiently particularized guarantees of trustworthiness, such that their admission did not violate the Confrontation Clause.

### IV. Admissibility Under Rule 804(b)(3)

Saget next argues that several of Beckham's individual statements were not admissible as statements against his penal interest because they were not sufficiently self-inculpatory to implicate Rule 804(b)(3). We review the district court's determination with respect to the admissibility of the statements under the Federal Rules of Evidence for abuse of discretion. *See Tropeano*, 252 F.3d at 657.

A statement may be admitted under Rule 804(b)(3)'s hearsay exception for statements against penal interest only if the district court determines that a reasonable person in the declarant's shoes would perceive the statement as detrimental to his or her own penal interest. *See Williamson v. United States*, 512 U.S. 594, 599–603, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) (holding that a court may admit only those portions of a declarant's statement that are truly self-inculpatory). Here, the district court correctly determined, after an adequately particularized analysis, that the bulk of Beckham's statements were self-inculpatory because they described acts that Saget and Beckham committed jointly.[3] Those statements in which Beckham described acts that Saget alone had committed—such as Beckham's statement that the authorities arrested one of Saget's straw purchasers while Saget himself escaped investigation—were self-inculpatory in context, the court concluded, because the statements reflected Beckham's attempt to give the CI examples of how he and Saget operated and why their scheme worked. Having reviewed the record, we find no abuse of discretion in the district court's analysis of these statements.[4]

### CONCLUSION

For the foregoing reasons, the judgment of conviction is AFFIRMED with respect to the introduction of Beckham's statements as substantive evidence against Saget. A summary order will follow with

---

3. Saget argues that certain of these statements were not self-inculpatory because the meaning ascribed to them by the government was incorrect or speculative. For instance, the government contends that Beckham's statement that "we drove them down" indicated that Beckham and Saget were driving the guns to New York, but Saget asserts that the government's reading is impermissible because, in light of contemporaneous statements about driving "up" to New York from Philadelphia, Beckham's use of the word "down" eliminates the possibility that he and Saget had transported the guns northward. The district court did not abuse its discretion in admitting these statements, however, as the government's interpretations of the statements are facially reasonable. Saget was of course free to argue to the jury that the statements were so ambiguous that they lacked significant probative value.

4. To the extent that Saget's argument is that Beckham's statements were not truly against his interest because Beckham made the statements in an attempt to persuade the CI to enter into the conspiracy, it is misplaced. Even if the statements were in Beckham's *pecuniary* interest, they were clearly self-inculpatory and therefore against his *penal* interest, as required by Rule 804(b)(3).

respect to defendant's other challenges to his conviction.