Submitted on appellant's petition for reconsideration filed May 27, and respondent's response to petition filed June 10, reconsideration allowed; previous disposition (192 Or App 364, 87 P3d 709) adhered to October 13, petition for review denied December 21, 2004 (337 Or 669)

STATE OF OREGON,
*Respondent,*

*v.*

CHIO HANG SAECHAO,
*Appellant.*

C010928CR; A115575

98 P3d 1144

Jamesa J. Drake, Deputy Public Defender, Office of Public Defense Services, for petition.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Julie A. Smith, Assistant Attorney General, for respondent.

Before Landau, Presiding Judge, and Armstrong, Judge, and Leeson, Judge pro tempore.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant seeks reconsideration of our decision in this case, in which we affirmed without opinion his convictions for one count of robbery in the first degree and two counts of robbery in the second degree. *State v. Saechao*, 192 Or App 364, 87 P3d 709 (2004). Defendant argues that, under *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004)—decided shortly after we affirmed his convictions—admission of certain evidence in his trial violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.[1] We allow reconsideration but, for the reasons stated below, we reject defendant's argument and affirm the convictions.

As pertinent here, during defendant's trial on the robbery charges, the state offered a tape recording of a telephone call that defendant's codefendant made to a third party from the county jail. The state offered the tape recording for the purpose of rebutting defendant's alibi defense. Defendant objected to the admission of the tape on federal Confrontation Clause grounds. The trial court overruled the objection, finding both that defendant's codefendant was unavailable as a witness based on his choice not to testify in defendant's case and that the tape recording was "reliable." On appeal, defendant renewed his argument that admission of the evidence violated his federal Confrontation Clause rights. As noted, we affirmed without opinion.

In his petition for reconsideration, defendant explains that the United States Supreme Court has now rejected the previously well-settled formulation in *Ohio v. Roberts*, 448 US 56, 66, 100 S Ct 2531, 65 L Ed 2d 597 (1980), whereby an out-of-court statement is deemed admissible if the declarant is unavailable and the statements have "adequate 'indicia of reliability.'" Defendant concedes that the court's holding in *Crawford* is limited to evidence that is "testimonial." Defendant asserts, however, that the state had the

---

[1] The Confrontation Clause of the Sixth Amendment to the United States Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

burden of showing that the challenged statements in his case were not testimonial, that it failed to make that showing, and that, accordingly, admission of the statements was erroneous. Defendant seeks reversal of his convictions and remand for a new trial.

The state responds that, as a matter of law, the relevant statements were not "testimonial" under *Crawford* because they were not obtained by way of any formalized procedure, such as by affidavit, deposition, or prior testimony, and were not made to an investigative governmental official such as a police officer or prosecutor. Rather, the state argues, the statements were mere casual remarks by the codefendant to a friend. The state also argues that, even if we cannot determine on this record the nature of the statements, we should not reverse defendant's convictions, but should vacate them and remand the case to the trial court, instructing it to order a new trial only if it determines that the statements were testimonial and otherwise to reinstate defendant's convictions.

In *Crawford*, the Supreme Court examined the historical background of the Confrontation Clause, specifically, practices relating to the examination of witnesses under English and American Colonial common law. 541 US at ____ , 158 L Ed 2d at 187-92. The Court concluded, consistently with that history, that "the principal evil" at which the Confrontation Clause was directed was the use of civil-law practices in criminal trials, particularly the use of *ex parte* examinations as evidence against an accused. The Court therefore "once again reject[ed] the view that the Confrontation Clause applies of its own force only to in-court testimony" and that out-of-court statements introduced at trial were subject only to the law of evidence. As the Court explained, leaving the regulation of out-of-court statements to the law of evidence "would render the Confrontation Clause *powerless to prevent even the most flagrant inquisitorial practices.*" *Id.* at ____ , 158 L Ed 2d at 192.

The Court also explained, however, that

"not all hearsay implicates the Sixth Amendment's core concerns. An off-hand, overheard remark might be unreliable evidence and thus a good candidate for exclusion under

hearsay rules, but it bears little resemblance to the civil-law abuses the Confrontation Clause targeted. On the other hand, *ex parte* examinations might sometimes be admissible under modern hearsay rules, but the Framers certainly would not have condoned them."

*Id.* Accordingly, the Court limited the applicability of the Confrontation Clause to statements constituting "testimony." It reviewed its previous formulations of that category of statements and determined that it includes both in-court testimony and its "functional equivalent," such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, and "similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id.* at ____ , 158 L Ed 2d at 192-93 (citing *White v. Illinois*, 502 US 346, 365, 112 S Ct 736, 116 L Ed 2d 848 (1992) (Thomas, J., concurring)). The Court also determined that, "under even a narrow standard," statements taken by law enforcement officers in the course of interrogations are testimonial. *Id.* at ____ , 158 L Ed 2d at 193-94.

■　　Finally, the Court determined that such statements are admissible only when the declarant is unavailable to testify *and* the defendant had a prior opportunity to cross-examine.[2] *Id.* at ____ , 158 L Ed 2d at 194-95. In discussing that principle, the Court mentioned two additional kinds of statements that, "by their nature," are *not* testimonial, namely, business records and statements in furtherance of a conspiracy. *Id.* at ____ , 158 L Ed 2d at 195-96. Ultimately, however, the Court "le[ft] for another day any effort to spell out a comprehensive definition of 'testimonial,'" holding that, "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at ____ , 158 L Ed 2d at 203.

■　　We turn to whether the statements at issue in this case—defendant's codefendant's statements made to a friend

---

[2] Consistently with its rejection of the "reliability" rationale of *Roberts*, the Court noted that, "[t]o add insult to injury, some of the courts that admit untested testimonial statements find reliability in the very factors that *make* the statements testimonial." *Crawford*, 541 US at ____ , 158 L Ed 2d at 201 (emphasis in original).

during a telephone conversation from the county jail—are testimonial for the purpose of the Confrontation Clause as elucidated in *Crawford*. We readily conclude that they are not. Rather, they appear to be closely akin to the "off-hand, overheard remark" specifically identified by the Court in *Crawford* as not implicating the Sixth Amendment's "core concerns." Admission of those statements therefore was not error.

Reconsideration allowed; previous disposition adhered to.