**Todd E. PORTERFIELD, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–9033.**

Court of Appeals of Alaska.

Oct. 13, 2006.

James M. Ḥackett, Fairbanks, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Todd E. Porterfield was convicted of first-degree murder and first-degree arson for intentionally starting a fire for the purpose of killing another person.[1] One important aspect of the State's case against Porterfield was evidence of various statements that Porterfield's wife, Michele, made about the arson / homicide to a woman named Diana Knight. Knight was a friend of the Porterfields', and Michele Porterfield talked to her about the crime in the belief that Knight was friendly toward her and her husband. In fact, Knight was cooperating with the police and secretly taping her conversations with Ms. Porterfield.[2]

---

1. AS 11.41.100(a) (first-degree murder) and AS 11.46.400(a) (first-degree arson).

2. These facts are described in more detail in *Porterfield v. State,* 68 P.3d 1286, 1288 (Alaska App.2003).

Porterfield's wife did not testify at his trial. (She was tried separately for her role in the arson / homicide.) However, edited versions of Ms. Porterfield's taped statements to Knight were introduced into evidence under the hearsay exception for statements against penal interest.[3] Knight also testified about Ms. Porterfield's initial, untaped statement to her about these crimes (a statement that Ms. Porterfield made on the day following the arson / homicide).[4]

In Porterfield's direct appeal of his convictions, he argued that his wife's statements to Knight should not have been admitted under the "statement against penal interest" hearsay exception. And, in the alternative, Porterfield argued that even if his wife's statements were admissible under this hearsay exception, the admission of these out-of-court statements nevertheless violated his right of confrontation under the Sixth Amendment to the United States Constitution.

We held that Ms. Porterfield's out-of-court statements were admissible as statements against penal interest, and we further held that the admission of these statements did not violate Porterfield's right to confront the witnesses against him. *Porterfield v. State,* 68 P.3d 1286, 1288–1291 (Alaska App.2003).

However, one year after we decided Porterfield's direct appeal of his convictions, the United States Supreme Court adopted a different interpretation of the confrontation clause. In *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court interpreted the confrontation clause to strictly prohibit the government's use of "testimonial hearsay" in criminal cases, even though this testimonial hearsay might fit within a recognized hearsay exception, unless (1) the declarant testifies (and is thus available for cross-examination) at the defendant's trial or (2) the declarant is shown to be unavailable and the defendant had the opportunity to cross-examine the declarant in a previous proceeding. *Id.,* 541 U.S. at 68, 124 S.Ct. at 1374.

Based on the *Crawford* decision, Porterfield filed a petition for post-conviction relief in which he renewed his argument that the admission of his wife's out-of-court statements violated his right of confrontation. The superior court denied Porterfield's petition, and Porterfield now appeals the superior court's decision.

The Supreme Court has not yet provided an explicit definition of "testimonial hearsay".[5] However, in *Crawford,* the Supreme Court indicated that while accusatory statements made to government officials are likely "testimonial", statements made to a friend or acquaintance are likely not: "An accuser who makes a formal statement to government authorities bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.,* 541 U.S. at 51, 124 S.Ct. at 1364.

■ Courts from around the country have concluded, consistent with this assertion, that when someone makes statements to an informant (a "false friend"), not knowing that these statements are being relayed to the police, the statements are not "testimonial".

For example, in *United States v. Hendricks,* 395 F.3d 173 (3rd Cir.2005), the Third Circuit concluded that conversations surreptitiously recorded by police wiretaps during the investigation of a drug trafficking and money laundering scheme were more analogous to "casual remark[s] to an acquaintance" than to formal statements to government officials—and that, therefore, these statements were not "testimonial" for purposes of *Crawford.* *Id.* at 181. In addition, the Third Circuit held that even statements made directly to a confidential informant (who was wearing a taping device) were not testimonial since "the various defendants and coconspirators [under investigation] ... did not realize that their statements were going to be used prosecutorially"; rather, their statements "constitute[d] admissions unwittingly made". *Id.* at 182 n. 9, 183–84.

**3.** *Id. See* Alaska Evidence Rule 804(b)(3).

**4.** *Porterfield,* 68 P.3d at 1288.

**5.** *See Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374 ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.' ").

The same result was reached by the Oregon Court of Appeals in *State v. Chio Hang Saechao*, 195 Or.App. 581, 98 P.3d 1144 (2004). This case involved hearsay testimony concerning statements made by a co-defendant, while in jail, during a telephone conversation with a friend. (This telephone conversation was secretly being taped).[6] The court held that the co-defendant's statements were not "testimonial" for purposes of *Crawford. Id.* at 1145–46.

In *United States v. Saget*, 377 F.3d 223 (2nd Cir.2004), the Second Circuit noted that all three of *Crawford's* formulations of the core meaning of "testimonial"—to wit, (1) *ex parte* in-court testimony or its equivalent; (2) extrajudicial statements contained in formal testimonial materials like affidavits or depositions; and (3) statements made under a reasonable belief that they would be used at a later trial—all dealt with situations where "the declarant reasonably expects [at the time the statement is made] that the statement might be used in future judicial proceedings." *Crawford*, 541 U.S. at 51–52, 124 S.Ct. at 1364; *Saget*, 377 F.3d at 229. In contrast, incriminating statements made to a police informant are generally made only because the declarant does *not* believe that the statements will be available to the authorities for use in a criminal prosecution.

In *Saget*, for example, the defendant and his co-conspirator, Shawn Beckham, were engaged in an illegal firearms trafficking scheme.[7] Believing that a police informant was actually a friend who was interested in joining their scheme, Beckham made statements to this informant implicating both himself and Saget.[8] Beckham's statements to the informant were recorded, and these statements were later admitted at Saget's trial under the hearsay exception for statements against penal interest.[9]

Beckham was unavailable to testify at Saget's trial,[10] and Saget argued that the admission of Beckham's out-of-court statements violated his right of confrontation. But the Second Circuit held that Beckham's statements were not "testimonial" hearsay—because Beckham had not made these statements in a formal interrogative environment, and because Beckham had not been aware that he was speaking to a police informant. *Id.* at 228–230.

Although the *Saget* court recognized that the Supreme Court had not completely defined the boundaries of "testimonial" hearsay, the court noted that "*Crawford* at least suggests that the determinative factor ... is the declarant's awareness or expectation that his or her statements may later be used at a [criminal] trial." [11]

The Second Circuit noted that, in the *Crawford* opinion, the Supreme Court spoke approvingly of the result reached in an earlier case, *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).[12] In *Bourjaily*, the Supreme Court upheld the admission of a co-conspirator's statements (recorded by an FBI informant) against the assertion that the admission of these out-of-court statements violated the defendant's right of confrontation.[13] *Bourjaily* was decided under pre-*Crawford* law, but the Supreme Court's opinion in *Davis v. Washington* describes the *Bourjaily* result as being consonant with the interpretation of the confrontation clause that the Supreme Court adopted in *Crawford.* The *Davis* opinion declares that the hearsay at issue in *Bourjaily* was "clearly nontestimonial".[14]

Other cases likewise reach the conclusion that a co-conspirator's statements to a government informant are not "testimonial" for *Crawford* purposes. *See United States v. Underwood*, 446 F.3d 1340, 1347 (11th Cir. 2006) (holding that hearsay testimony con-

**6.** *Chio Hang Saechao*, 98 P.3d at 1145.

**7.** *Saget*, 377 F.3d at 225.

**8.** *Id.*

**9.** *Id.*

**10.** *Id.*

**11.** *Id.* at 228.

**12.** *Saget*, 377 F.3d at 229.

**13.** *Bourjaily*, 483 U.S. at 173–74, 181–82, 107 S.Ct. at 2778, 2782.

**14.** *Davis v. Washington*, 547 U.S. ——, ——, 126 S.Ct. 2266, 2275, 165 L.Ed.2d 224 (2006).

cerning a co-conspirator's recorded statements to a police informant was not "testimonial" for purposes of *Crawford* because the co-conspirator's statements "clearly were not made under circumstances which would have led [the declarant] to believe that his statement would be available for use at a later trial. Had [the declarant] known that [he was speaking to] a confidential informant, it is clear that he never would have spoken to her in the first place."); *United States v. Holmes*, 406 F.3d 337, 348–49 (5th Cir.2005) (asserting that statements made by a co-conspirator to a government informant, in furtherance of a conspiracy, are generally non-testimonial and therefore admissible against an accused despite the declarant's absence from the trial); *United States v. Reyes*, 362 F.3d 536, 540 n. 4 (8th Cir.2004) (explaining that co-conspirator statements made to a government agent are non-testimonial).

Porterfield's case involves hearsay testimony that was admitted under the hearsay exception for statements against penal interest, rather than the exception for co-conspirator statements. For this reason, the fact that the result in *Bourjaily* is consistent with *Crawford's* interpretation of the confrontation clause does not directly answer the issue raised in Porterfield's case. But in *Davis v. Washington*, the Supreme Court stated that the result reached in *Dutton v. Evans*—a case dealing with hearsay statements against penal interest—is likewise consonant with *Crawford's* interpretation of the confrontation clause.[15]

In *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Supreme Court upheld the admission of a statement made by one prisoner to another; this statement implicated both the declarant and the defendant in a murder. The Supreme Court held that the admission of this statement did not violate the defendant's right of confrontation, even though the declarant was not available as a witness at trial.[16] According to the Court, the "statement was spontaneous, and

it was against [the declarant's] penal interest to make it." [17]

Obviously, *Evans* was decided under pre-*Crawford* law. But in *Davis v. Washington*, the Supreme Court declared that the hearsay in *Evans* was "clearly nontestimonial" for purposes of *Crawford*.[18]

■ Given this case law, we readily conclude that the statements made by Porterfield's wife to Diana Knight were not "testimonial" for purposes of *Crawford*.

Michele Porterfield had no knowledge that Knight was cooperating with the police and had agreed to tape record their conversations. Ms. Porterfield had no reason to believe that Knight was anything other than a friend. The evidence showed that Ms. Porterfield confided in Knight because her husband had told her that Knight could be trusted. As we noted in Porterfield's direct appeal,

> In [the] first conversation [*i.e.*, the untaped conversation in which Michele Porterfield first informed Knight that she and Porterfield had killed a man,] and in the following taped conversations, there was no apparent reason for [Michele] Porterfield to fabricate her admissions.... Even though [Michele] Porterfield's account implicated [her husband Todd] Porterfield in the arson and murder, Judge Pengilly found that there was no indication that Mrs. Porterfield minimized her own role or tried to shift blame to Porterfield.
>
> Mrs. Porterfield had no reason to believe that her statements to Knight would curry any favor with the police or the State because[, as] Judge Pengilly found[,] she had no reason to anticipate [that her] statements would be relayed to law enforcement.

*Porterfield*, 68 P.3d at 1291.

The hearsay testimony concerning Michele Porterfield's out-of-court statements to Diana Knight was not "testimonial" for purposes of the confrontation clause of the Sixth Amendment as interpreted in *Crawford*. Accord-

---

**15.** *Davis*, 547 U.S. at ——, 126 S.Ct. at 2275.

**16.** *Evans*, 400 U.S. at 88–89, 91 S.Ct. at 219–220.

**17.** *Id.*, 400 U.S. at 89, 91 S.Ct. at 220.

**18.** *Davis*, 547 U.S. at ——, 126 S.Ct. at 2275.

ingly, the superior court correctly rejected Porterfield's claim that he was entitled to post-conviction relief based on *Crawford*.

The judgement of the superior court is AFFIRMED.