UNITED STATES, Appellee,

v.

Staff Sergeant John L. THOMAS, 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, United States Army, Appellant.

ACMR 9002824.

U.S. Army Court of Military Review.

20 Nov. 1992.

For Appellant: Colonel Robert B. Kirby, JAGC, Lieutenant Colonel James H. Weise, JAGC, Captain Michael P. Moran, JAGC, Captain David L. Thomas, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major Joseph C. Swetnam, JAGC, Major Timothy W. Lucas, JAGC, Captain Glenn L. Kirschner, JAGC (on brief).

Before CREAN, ARKOW, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT ON REMAND

CREAN, Senior Judge:

The appellant was found guilty, contrary to his pleas, by a general court-martial composed of enlisted members, of making a false official statement with intent to deceive, larceny, submitting a false statement in connection with a claim against the United States, dishonorable failure to pay a debt, violating a lawful general regulation, and using and possessing a false military identification card with intent to deceive, in violation of Articles 107, 121, 132, 134, and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 921, 932, 934, and 892 (1982) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for seven years, forfeiture of $500.00 pay per month for seven years, and reduction to Private E1.

In an Opinion of the Court dated 16 December 1991, this Court affirmed the findings of guilty and the sentence, but amended the period of time for forfeitures from years to months. *United States v. Thomas*, 33 M.J. 1067 (A.C.M.R.1991). On appeal to the United States Court of Military Appeals, the appellant raised for the first time that the evidence was not legally and factually sufficient for the findings of guilty as to the larceny. The Court of Military Appeals returned the case to this Court for consideration of this issue.

*United States v. Thomas,* Dkt. No. 67672/AR (C.M.A. 16 Sep.1992) (order). The initial issues raised are our first opinion discussed only the admissibility of evidentiary items. We adhere to the holdings in our earlier opinion on the admissibility of the evidence and hold that the evidence was properly admitted. We now turn to the issue of the legal and factual sufficiency of the evidence for the offense of larceny.

In raising the legal and factual sufficiency issue for the first time, the appellant cites as his authority an opinion of the Army Judge Advocate General, *United States v. Francis,* JALS–EDS SPCM 1190/0018 (17 June 1991) (unpub.), decided under Article 69(b), UCMJ, 10 USC § 869(b). However, this case is different from the factual circumstances of the *Francis* case and we decline to follow it. In addition, the decision in *Francis* may no longer be correct in light of the Court of Military Appeals' decision in *United States v. Antonelli,* 35 M.J. 122 (C.M.A.1992).

The appellant was assigned to Korea unaccompanied by his family in February 1989. As a senior noncommissioned officer, the appellant requested and received permission from his unit commander to live off-post. He negotiated a lease for an apartment with the landlady, Ms. Cho. This lease was for 380,000 Won per month with a 3,000,000 Won security deposit. The appellant filed the correct paperwork with the finance office for payment of an advance security deposit. One of the forms appellant signed read that the "Service member understand (sic) that he must contact the Finance Officer immediately upon termination of this quarters." In addition, the appellant's Leave and Earnings Statement (LES) states that the advance security deposit was to be repaid no later than January 1990, the month before the appellant was to complete his tour in Korea. The appellant received the advanced security deposit and Overseas Housing Allowance (OHA) for the rent, and moved into the apartment in April or May 1989.

The appellant terminated this lease in October 1989 with the consent of Ms. Cho.

He informed her that he was going back to live in his unit and she returned his security deposit of 3,000,000 Won. The appellant, with the permission and knowledge of both his company commander and his first sergeant, moved into the unit billets in October 1989. He continued receiving his OHA and did not return the security deposit money to the finance office.

The appellant received notice in January or February 1990, that he was reaching the end of his overseas tour and the 3,000,000 Won security deposit was due back to the government. The appellant then negotiated a lease for a second apartment with the landlord, Mr. Kim, for 350,000 Won per month. No security deposit would be required if the entire lease amount was paid in advance. This lease was written entirely in Korean. The appellant then asked the real estate agent, Ms. Woo, who rented apartments for Mr. Kim, to make a second lease for the Kim apartment on the Army Housing Referral lease form. He asked Ms. Woo to list the rental fee as 500,000 Won per month and that a 3,000,000 Won security deposit was required. Ms. Woo agreed even though she knew the correct details of the lease. Mr. Kim signed the lease without reading it because Ms. Woo informed him that it was exactly the same as the Korean lease he had executed earlier.

The appellant submitted the paper work to the housing and finance offices for the continued payment of OHA, but now at the higher rate. Also, no action was taken to collect the security deposit because of the requirement for the security deposit for the Kim apartment. In March 1990, the appellant's company commander realized that the appellant was drawing OHA while living in the barracks and notified the finance office.

There is ample evidence that the appellant was having financial problems during 1990 and early 1991. After he was charged with the larceny offense and an investigation under Article 32, UCMJ, was conducted, the appellant told a close friend that he was "guilty as sin" of the larceny of the advance security deposit and the

OHA, but "they were going to have to prove it."

■ This is not a case in which a soldier received extra pay or allowances because of a mistake by the government finance office and, although knowing that he was not entitled to it, kept it until the government asked for it to be returned. It is a case where the appellant had a duty to inform the government of a change of circumstances (return to living in the barracks), but failed to do so, and thereby continued to receive allowances to which he was not entitled and keep money he was required to pay back.

The appellant asserts that the facts in his case are exactly the same as that in the *Francis* case. He asserts that there was no fiduciary relationship between himself and the government as to the OHA payments because there was no affirmative duty to notify finance of his change in status. The appellant further asserts that the government had constructive knowledge of his change of status because his company commander and first sergeant knew he had moved into the barracks and that the first sergeant checked his LES, as he did for all soldiers in the unit, to ensure only correct allowances were received by the soldiers. He concludes he should not be held accountable for a failure of communication between the unit and the finance office, and the finance office's administrative ineptness.

The facts of the *Francis* case are different from the facts in this case. We will quote and rely on the facts as found by the examiner for The Judge Advocate General:

> Upon arriving at his duty station in Korea, the applicant [Francis] was assigned government-leased quarters. The applicant and his family lived in the government quarters from December 1984 until March 1989. From December 1984 until December 1988 the applicant received a monthly basic allotment for quarters (BAQ) in his pay. A servicemember is not authorized to receive BAQ while living with his family in government leased quarters. Over the period of four years, the applicant received $19,000 in BAQ payments he was not due.

> The applicant took no action to initiate the BAQ payments. He also did not attempt to conceal from the finance office or any other agency that he was living in government leased quarters. Upon moving into the government quarters, the applicant signed an acknowledgment for the housing office that he was moving into government quarters. The housing office used this acknowledgment to inform the finance office that the applicant was in government quarters so that BAQ would not be initiated. In February 1985, the applicant moved from one set of government quarters to another. In order to do so, the applicant had to submit a disposition form through his chain of command to the Director of Housing requesting the move. As a result of this request, the finance office was notified a second time that the applicant was residing in government quarters.

> SSG Terry of the 175th Finance and Accounting Office testified that in addition to the housing office notification as a check on a servicemember's BAQ eligibility, the U.S. Army Finance and Accounting Center at Fort Benjamin Harrison does an annual review to confirm authorization for BAQ. It is not apparent from the summarized record of trial why, in light of the above safeguards, the overpayments were not discovered for four years. The record also fails to disclose what finally led to the discovery of the overpayments by the finance office.

> The applicant took no action to terminate the BAQ payments. The applicant testified that he knew that the money was an overpayment, and he believed it was "automatic that finance" would ultimately recoup the money. When the finance office did detect the error, they notified the applicant that he owed the government $19,000. The day after being notified, the applicant paid the $19,000 in full.

The Judge Advocate General, in overturning the finding of guilty of larceny in

*Francis*, relied on a decision of the Court of Military Appeals and a decision of this Court. The case of *United States v. McFarland*, 23 C.M.R. 266 (C.M.A.1957), was cited for the proposition that there is no offense of larceny by withholding when there is not a fiduciary relationship between the accused and the victim. The examiner for The Judge Advocate General also relied on the opinion of this Court in *United States v. Watkins*, 32 M.J. 527, 529 (A.C.M.R.1990). That case involved a fact pattern similar to that in *Francis*. In *Watkins*, this Court set aside the conviction for wrongful appropriation because it determined that a sufficient factual basis had not been made to accept Watkins' pleas of guilty to wrongful appropriation of the BAQ money she received from the government that she was not entitled to receive. This Court found that Watkins' statement that she reported the overpayment to the housing office on two occasions was inconsistent with the required *mens rea* and warranted rejection of her pleas. This Court reasoned that "in the absence of a fiduciary duty to account, a withholding of funds otherwise lawfully obtained is not larcenous." The evidence is legally and factually insufficient where "the appellant came into the funds legitimately when agents of the government failed to terminate her BAQ after she accepted government quarters." This Court further stated, "We have found no cases which hold that individuals who fail to inform military authorities of an overpayment of pay and allowances are criminally liable to prosecution under Article 121, UCMJ." The opinion of the examiner for The Judge Advocate General did note that an Air Force case, *United States v. Dean*, ACM 28805, 1990 WL 199938 (A.F.C.M.R. 21 Nov.1990) (unpub.), came to an opposite conclusion.

▬▬ The test for legal sufficiency is whether, considering the evidence in the light most favorable to the government, the trier of fact could rationally find the existence of every element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A.1991).

The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witness, this Court is itself convinced of appellant's guilt beyond a reasonable doubt. UCMJ art. 66(c), 10 USC § 866(c); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

The facts in both *Watkins* and *Francis* are different from the facts in this case. In both of those cases, after a change to living in government quarters, the soldiers filed the correct paperwork but the Army finance office failed to stop the BAQ payments. In *Watkins*, the soldier tried twice to stop the payment of BAQ, but it kept coming. In *Francis*, apparently no attempt was made to stop the payment of BAQ. In this case, the appellant moved into the barracks, but did not notify finance or housing that he was no longer living off-post and not entitled to BAQ. There is sufficient evidence that the appellant knew of a duty to notify finance of his change of status, but he chose not to do so. The knowledge of his unit of the change of status did not affect any requirement he had to also notify the finance office. We find that the ORA payments he received were not mistakenly or lawfully obtained and that he knew he had a duty to inform authorities of his change of status but purposely did not do so. Accordingly, we hold that the evidence is legally and factually sufficient to sustain the findings of guilty of the larceny.

Even if we did not conclude that this case is different from *Watkins* and *Francis*, we are not convinced, after the *Antonelli* decision, that they are still good law and correctly decided. In *Antonelli*, the Court of Military Appeals determined that when a soldier receives allowances (as opposed to basic pay), there is a "bailment" and the monies remain the property of the United States. As such, the soldier has a duty to account for the property. As Judge Crawford points out in her concurrence:

> In any event, common law larceny includes the mistaken delivery of property. [Citation omitted.] It includes an individual who mistakenly receives an allow-

ance and realizes his or her mistake at the moment *and* forms the intent to steal. Of course, an individual who does not realize the mistake, such as overpayment for a complicated travel voucher, would not be guilty of larceny. But if the individual later learns of the mistake and has the requisite intent, there may be larceny. There is a "fictional notion of continuing trespass" to find the taking-and-asportation element.

*Antonelli*, 35 M.J. at 131.

In *Francis*, the applicant knew he was not entitled to the BAQ and took no steps to stop the payment. Under the *Antonelli* rationale, he is either guilty of larceny or wrongful appropriation under Article 121 depending on the factfinder's determination of his intent. In *Watkins*, the appellant would be guilty of larceny under Article 121, UCMJ, if the factfinder determines that after she stopped notifying the finance office of the overpayment she formed the requisite intent to steal. Since *Watkins* was a guilty plea case, it only stands for the proposition that the military judge failed to establish the required factual predicate for the findings of guilty for wrongful appropriation.

As we did in our earlier opinion, *Thomas*, 33 M.J. at 1069, we have considered the matters raised personally by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and determine that they are without merit. As we stated earlier, the adjudged forfeitures must be expressed in terms of months rather than years. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1003(b)(2).

The findings of guilty are affirmed. The Court affirms only so much of the sentence as provides for a dishonorable discharge, confinement for seven years, forfeiture of $500.00 pay per month for 84 months, and reduction to Private E1.

Judge ARKOW and Judge GONZALES, concur.