# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

---

**No. ACM 39805 (f rev)**

---

**UNITED STATES**
*Appellee*

v.

**Brandon M. LEACH**
Airman Basic (E-1), U.S. Air Force, *Appellant*

---

Appeal from the United States Air Force Trial Judiciary

*Upon further review*

Decided 3 February 2022

---

*Military Judge:* Jennifer E. Powell; Andrew R. Norton (remand).

*Sentence:* Sentence adjudged on 12 September 2019 by GCM convened at Hill Air Force Base, Utah. Sentence entered by military judge on 21 October 2019 and reentered on 2 February 2021: Bad-conduct discharge, confinement for 10 months, and a reprimand.

*For Appellant:* Major Ryan S. Crnkovich, USAF; Major David A. Schiavone, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Brian E. Flanagan, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, KEY, and ANNEXSTAD, *Appellate Military Judges*.

Senior Judge KEY delivered the opinion of the court, in which Chief Judge JOHNSON and Judge ANNEXSTAD joined.

---

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

KEY, Senior Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement, of two specifications of assault consummated by a battery in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[1,2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for ten months, and a reprimand.[3]

This case is before us for a second time. In an earlier opinion, we determined the convening authority had failed to take action on the sentence as required by Executive Order 13,825, § 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), and Article 60, UCMJ, 10 U.S.C. § 860 (*Manual for Courts-Martial, United States* (2016 ed.)), and we remanded Appellant's case to the Chief Trial Judge, Air Force Trial Judiciary, for corrective action. *See United States v. Leach*, No. ACM 39805, 2021 CCA LEXIS 3, at *7–8 (A.F. Ct. Crim. App. 8 Jan. 2021) (unpub. op.). The convening authority subsequently approved Appellant's sentence, resulting in a new entry of judgment. Now that this error has been corrected, we turn to the assignment of error Appellant raises on appeal: whether the military judge abused her discretion by admitting in evidence— over defense objection—recorded phone calls between Appellant and others.[4] Finding no error prejudicial to the substantial rights of Appellant in the case returned to us, we affirm the findings and sentence.

## I. BACKGROUND

This appeal arises from Appellant's second court-martial. His first court-martial concluded on 8 June 2018 with Appellant sentenced to a dishonorable discharge, confinement for three years, reduction to the grade of E-1, and a reprimand after he was found guilty of sexual assault and drug-abuse offenses. *See United States v. Leach*, No. ACM 39563, 2020 CCA LEXIS 230 (A.F. Ct.

---

[1] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise specified, all other references to the UCMJ, the Rules for Courts-Martial, and the Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Pursuant to the terms of the pretrial agreement, the convening authority withdrew and dismissed after arraignment a charge and its specification of sexual assault, an alleged violation of Article 120, UCMJ, 10 U.S.C. § 920.

[3] The pretrial agreement precluded the Government from trying Appellant for various uncharged offenses but did not constrain the convening authority from approving Appellant's adjudged sentence.

[4] Appellant personally raises this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

Crim. App. 8 Jul. 2020) (unpub. op.). Those offenses came to light in July 2017 when Appellant's girlfriend at the time, Ms. LE, reported to law enforcement that Appellant was using controlled substances and had assaulted her. *Id.* at *6. She made this report after learning that Appellant was seeing another woman, Ms. BL. *Id.* at *5–6.

On 22 September 2017, while under investigation for the offenses tried at his first court-martial, Appellant married Ms. BL, and—at some point in October or November 2017—Appellant struck Ms. BL in her face with his hand while the two were arguing. Several months later, in early April 2018, Appellant and Ms. BL were again arguing in their apartment, and Appellant provoked Ms. BL to swing at him, which she did. Appellant dodged Ms. BL's swing and grabbed her by the neck with one hand and pushed her up against the kitchen wall. Appellant then struck Ms. BL across her face with his other hand, leaving a "red mark," according to his testimony during his providence inquiry. Because of all the noise, a neighbor called 911, and when the police arrived, Ms. BL acknowledged she had taken the first swing at Appellant. Appellant did not admit to assaulting Ms. BL, and as a result Ms. BL, not Appellant, was arrested. A few weeks later, Appellant was placed in pretrial confinement based upon offenses related to his first court-martial. *Id.* at *7.

Appellant remained in pretrial confinement through his first court-martial and transitioned into post-trial confinement when he was sentenced on 8 June 2018. Meanwhile, law enforcement investigated Ms. BL's reports that Appellant had attacked her. Appellant was ultimately charged in February 2019 with two specifications of assault consummated by a battery, specifications which encompassed the two attacks upon Ms. BL outlined above.

While serving his post-trial confinement at the Naval Consolidated Brig in Miramar, California, Appellant's phone calls were recorded. During the Government's sentencing case in Appellant's second court-martial in September 2019, trial counsel sought to introduce portions of four recorded phone conversations between Appellant and other people. The military judge admitted portions of three of these conversations over defense objection, giving rise to the issue Appellant now raises before us.

During the providence inquiry at his second court-martial, Appellant portrayed himself as apologetic and remorseful for his conduct, telling the military judge he was "sorry," "ashamed of [him]self," and that he had "failed [Ms. BL] as a husband." At one point in the inquiry, Appellant said, "I'm just sorry that I couldn't give her more things to laugh about. I love you, [BL], if you can hear me. I'm sorry."

The prison recordings, however, paint Appellant in a different light. In the first call, Appellant has a conversation with an unidentified woman.[5] Referring to his wife by her name, Appellant asks the woman to pull up Ms. BL's Facebook page and to look and see if Ms. BL was "saying anything about [him]." Following his directions, the woman reads a passage about emotional abuse and controlling behaviors. For example, one line in the passage is: "If they isolate you from friends, family, and determine for you who you can and cannot speak to, that is abuse," to which Appellant replies, "What the f[**]k is wrong with this girl?" The woman goes on to read other entries, including one that says, "I am standing in the ashes of who I used to be" above a picture of a super hero. Appellant responds, "I'm glad she feels super-empowered f[**]king trying to put her husband in prison." The woman then reads a post pertaining to depression and suicide, and Appellant responds, "[S]he should definitely kill herself." The woman says, "Don't be harsh." Appellant responds, "Whew. You shut up. This woman is trying to f[**]king ruin my life."

The second call is between Appellant and his father.[6] In the recording, Appellant's father tells Appellant there is a law that allows men to take their girlfriends or their wives to the courthouse steps on a particular day of the month, "and you can beat her ass, and they won't do nothing. It's crazy. I mean nobody does it." Upon hearing this, Appellant laughs and says, "I'll be honest, that law doesn't sound too bad."

The third call is from Appellant to an unidentified woman.[7] In this call, Appellant talks about assaulting past girlfriends. Appellant also says to the woman, "I'll tell you now that if you ever hit me, I'll hit you back." He continues,

> My biggest thing is that I'll—I'll put in the effort that you put in. So, like if you try to hurt me, just because you're—because the person is too weak to hurt me, or didn't hurt me very much, didn't mean they didn't try. You know what I mean? . . . So if someone tries to hurt me, I'm going to try and hurt you back. So that's like your warning there.

Each of the three calls begins with an automated message indicating that the calls are from "Brandon, a prisoner at the Naval Consolidated Brig at Miramar." In each case, the message goes on to explain that the calls would be monitored and recorded.

---

[5] The first recording is identified in the record of trial as "Disc 39, Track 10."

[6] Identified as "Disc 8, Track 2."

[7] Identified as "Disc 49, Track 1."

In order to support the admission of the recordings, the Government provided the military judge with two documents from the confinement facility titled "certification statements."[8] Both statements are signed by the same "command investigator," who states he is the confinement facility's evidence custodian. In the first statement, the investigator certifies that the "attached recordings retrieved and provided" pertain to "Leach, Brandon." The statement then notes that "[t]he provided documents are true and accurate copies of [EG] phone calls from the brig between: 08 June 2018–11 February 2019."[9] The statement further explains, "The records were made at or near the time of the occurrence of the matters set forth in those records and they were created by a person with knowledge of the matters set forth therein or from information transmitted by a person with knowledge of those matters." Finally, the statement says the records "were kept in the regular course of the regularly conducted activity" of the confinement facility and that they were "made and maintained by [the facility] as a regular practice." The second statement is identical to the first except in two regards: the date range is 3 February 2019 to 22 May 2019, and Appellant's name appears in the place of "EG." Neither statement lists or otherwise identifies what recordings were actually "attached" to the statements.

Trial defense counsel mounted a multi-faceted objection to these calls. First, they argued the Government had failed to establish the authenticity of the recordings under Mil. R. Evid. 901 and Mil. R. Evid. 902. Next, trial defense counsel argued the recordings amounted to inadmissible hearsay and that the Government had not demonstrated that the calls fell within the "records of a regularly conducted activity" hearsay exception under Mil. R. Evid. 803(6). Trial defense counsel further argued the calls were inappropriate sentencing evidence under Rule for Courts-Martial (R.C.M.) 1001(b)(4) as not directly relating to or resulting from Appellant's offenses. Finally, the Defense submitted that even if the foregoing arguments failed, the evidence should be excluded under Mil. R. Evid. 403.[10]

In response, trial counsel said that they only sought to introduce Appellant's own statements in the calls for the truth of the matter asserted therein,

---

[8] The parties referred to these documents as "affidavits," while the military judge characterized them as "certificates."

[9] We use "EG" in place of the name that appeared on the affidavit. No evidence was offered to indicate whether EG was another inmate or if EG was an actual person at all.

[10] Although trial defense counsel made reference to Mil. R. Evid. 403, they did not offer any explanation as to why the evidence, if otherwise relevant and admissible, should be excluded under that rule.

and that such would be considered "statements by party opponents." Trial counsel said statements by others on the calls would "merely be for the effect on the listener"—that is, what prompted Appellant's various responses. Regarding the propriety of the military judge considering the calls, trial counsel argued Appellant's comments demonstrated his "remorseless attitude about the offenses," his attitude towards domestic violence in general, and the need to protect Ms. BL from him.

The military judge ruled the Government had adequately established the authenticity of the recordings, pointing not just to the statements from the evidence custodian, but also to the automated identification at the beginning of each clip identifying the prisoner as "Brandon." The military judge also cited the content of the calls themselves which included Appellant's wife's name and details about his courts-martial.[11] The military judge dismissed the reference to EG as a typographical error, likely being the result of the evidence custodian using an earlier document as a template. The military judge concluded the Government had "met the requirements" of Mil. R. Evid. 803(6) and 902(11) via the evidence custodian's statements. She also ruled that "the content of the recordings themselves further authenticate" the recordings, citing Mil. R. Evid. 901(b)(4) and 901(b)(6).

The military judge further explained that even if the recordings were not admissible under Mil. R. Evid. 803(6), Appellant's own statements during the calls were not hearsay, and neither were the statements of the people he spoke to insofar as those statements were admitted for their effect on Appellant, not on the truth of the matter asserted. She then determined Appellant's statements were appropriate matters in aggravation, largely because they reflected Appellant's attitudes toward his offenses and his victim, Ms. BL. She finally concluded that the probative value of the evidence was not substantially outweighed by any of the considerations in Mil. R. Evid. 403, but she did advise the parties she would not consider any references Appellant made to uncharged misconduct in the third recording, "specifically assaulting previous girlfriends."

After the recordings were admitted, Ms. BL was called as a witness by the Government.[12] She testified about the abuse she suffered at Appellant's hands as well as the psychological and physiological effects she endured after the as-

---

[11] The fourth recording, which the military judge did not admit, contained a discussion about Appellant's first court-martial.

[12] Ms. BL's divorce from Appellant was finalized just before his second court-martial, and Ms. BL testified under her maiden name. To avoid confusion, we refer to her as Ms. BL throughout this opinion.

saults. She also explained what measures she had taken to protect herself because of her fear of Appellant, such as moving into a secure apartment, taking self-defense classes, and carrying pepper spray. In addition, Ms. BL delivered an unsworn statement to the military judge in which she talked about her difficulties in recovering from her relationship with Appellant and her efforts at healing. The Government also introduced evidence of Appellant's first court-martial conviction.

## II. DISCUSSION

We review "a military judge's admission or exclusion of evidence, including sentencing evidence, for an abuse of discretion." *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)). An abuse of discretion occurs when a military judge's "findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Kelly*, 72 M.J. 237, 242 (C.A.A.F. 2013) (internal quotation marks and citation omitted).

On appeal, Appellant asks us to order a rehearing on his sentence. He argues that the military judge erred by concluding that the Government had established the authenticity of the recordings, overruling the Defense's hearsay objection, and finding Appellant's statements in the recordings to be proper sentencing evidence. We disagree on all three points, and we decline to grant Appellant his requested relief.

### A. Authenticity

Under Mil. R. Evid. 901(a), the proponent of a particular item of evidence must "produce evidence sufficient to support a finding that the item is what the proponent claims it is." As an example, Mil. R. Evid. 901(b)(4) identifies "distinctive characteristics and the like" of the item as establishing its authenticity, such as the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Mil. R. Evid. 902 sets out various items of evidence which are "self-authenticating" and require no additional evidence to establish their authenticity. One category of such self-authenticating evidence is "certified domestic records of a regularly conducted activity" under Mil. R. Evid. 902(11). This rule permits the admission of a domestic record which qualifies under the Mil. R. Evid. 803(6) hearsay exception "as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court." *Id.* Mil. R. Evid. 803(6) excepts "records of a regularly conducted activity" from the ordinary prohibition against hearsay

when such a record meets several of the requirements of that rule, such as the record being made in the regular practice of the activity in question.

As an initial proposition, we are skeptical that a recording of a phone call between a prison inmate and a third party unaffiliated with the prison about matters entirely unrelated to the operation of the prison amounts to a "record of a regularly conducted activity" simply by virtue of the fact the prison has a practice of recording all incoming and outgoing phone calls. Considering that the indicia of reliability justifying the "regularly conducted activity" hearsay exception is derived from the regularity of documenting a business practice, it is unclear how conversations between two people who are neither part of that business practice nor operating under any duty or incentive to further that practice would support a finding of reliability of the content of those conversations. *See, e.g.*, *United States v. Pazsint*, 703 F.2d 420, 424–25 (9th Cir. 1983) (finding recordings of emergency calls to a police station did not qualify for the business-record exception), *aff'd,* 728 F.2d 411 (9th Cir. 1984); *United States v. Plum*, 558 F.2d 568, 572 (10th Cir. 1977) (finding entries on forms made by a person who was not part of the organization which maintained the forms did not qualify for the exception). Thus, we question the applicability of Mil. R. Evid. 902(11)—a rule which permits the authentication of documents falling within the "regularly conducted activity" hearsay exception through a custodian's certification—to Appellant's case.

Nevertheless, we need not conclusively determine whether the evidence here was appropriately authenticated under Mil. R. Evid. 902(11), because the evidence could be authenticated under Mil. R. Evid. 901(a) by "evidence sufficient to support a finding that the item is what the proponent claims it is." Because Mil. R. Evid. 104(a) permitted the military judge to determine the admissibility of the evidence unrestricted by the rules of evidence, she was free to use the evidence custodian's statements, along with the distinctive characteristics of the recordings, to determine whether the Government had sufficiently proved the recordings' authenticity. *See, e.g.*, *United States v. Thomas*, 33 M.J. 1067, 1069 (A.C.M.R. 1991), *aff'd*, 36 M.J. 617 (A.C.M.R. 1992).

Considering the evidence custodian's statements explained the date range of the recordings and that the recordings were routinely made and kept by the confinement facility, the military judge had a firm basis for concluding the recordings were, in fact, prison phone calls. It was not clear error for the military judge to conclude the reference to a person other than Appellant on one of the statements was simply a scrivener's error, considering that the same statement also specifically named Appellant and indicated the recordings were of his calls. Furthermore, as the military judge explained, the calls themselves refer to Appellant's cases—even mentioning his then-wife by name—and each call leads off with Appellant's first name. We see no reason to conclude the

military judge abused her discretion in concluding the information she received was sufficient to support a finding that the recordings were of phone calls made by Appellant while he was incarcerated at the confinement facility.

**B. Hearsay**

Unless an exception applies, hearsay statements are inadmissible at courts-martial. Mil. R. Evid. 802. However, statements made by an opposing party, when offered against that party, are not hearsay at all. Mil. R. Evid. 801(d)(2). Moreover, out-of-court statements only amount to hearsay when they are offered to prove the truth of the matter asserted in those statements. Mil. R. Evid. 801(c)(2). Thus, out-of-court statements offered for other purposes, such as their effect on the listener to provide context, may be admitted as non-hearsay statements. *See, e.g.*, *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) (interpreting Fed. R. Evid. 801(c)(2), a provision which is identical to Mil. R. Evid. 801(c)(2)); *see also United States v. Merritt*, No. ACM 39350, 2019 CCA LEXIS 39, at *8 (A.F. Ct. Crim. App. 1 Feb. 2019) (unpub. op.) (citing *United States v. Barnes*, No. ACM 38720, 2016 CCA LEXIS 267, at *15–17 (A.F. Ct. Crim. App. 27 Apr. 2016) (unpub. op.) ("Statements made not for their substance but for their 'effect on the listener' may be admissible.").

Although we question the military judge's conclusion that the recordings qualified for the "regularly conducted activity" exception to the ordinary hearsay rule, we agree with the military judge's alternative conclusion that the recordings do not amount to hearsay at all. Because Appellant's own statements in the calls were offered against him by the Government, those statements were not hearsay under Mil. R. Evid. 801(d)(2). Trial counsel offered the statements made by others on the calls not to establish the truth of the matters asserted in those statements but to provide context to Appellant's own statements—that is, to explain why Appellant said what he did and how what he said related to his attitude toward his offenses. This is the prototypical "effect on the listener" situation in which Appellant, as the listener, was prompted to say certain things, and the military judge ruled she would only consider those statements for such a purpose. We conclude the military judge did not abuse her discretion in admitting the substance of the calls as non-hearsay.

**C. Appropriateness and Relevance of Evidence**

Under R.C.M. 1001(b)(4), the Government "may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." Appellant's attitude with respect to his crimes and his victims squarely implicates his state of mind regarding not just his offenses but his rehabilitative potential. As one of our sister courts has observed, "[e]vidence of the offender's attitude toward similar offenses, past or

future, is reliable circumstantial evidence, and often the only available evidence, on this issue." *United States v. Pooler*, 18 M.J. 832, 833 (A.C.M.R. 1984); *see also United States v. Scheuerman*, 67 M.J. 709, 711 (A. Ct. Crim. App. 2009); *United States v. Alis*, 47 M.J. 817, 825 (A.F. Ct. Crim. App. 1998).

Appellant was convicted of violently attacking Ms. BL. Yet, when confronted with her social media postings about domestic abuse, Appellant responded with the quip that "she should definitely kill herself" and complained that she was trying to have him jailed. Such statements not only show a remorseless and callous view of his victim, they squarely demonstrate that Appellant viewed the problem as Ms. BL reporting the attacks, not that Appellant had perpetrated them in the first place. This, of course, stood in stark contrast to the apologetic and remorseful persona Appellant portrayed during his providence inquiry. Similarly, Appellant's remark that the law permitting domestic abuse "doesn't sound that bad" is telling, considering Appellant was already in confinement due, in part, to offenses against a former girlfriend, and was facing trial for allegations of assaulting his then-wife. The comment thus provides salient commentary on Appellant's opinion about domestic abuse—namely, that it is not so much a crime as it is something to joke about. Finally, Appellant's statement about his willingness to attack anyone who tries to hurt him—even if they fail in that attempt—takes on particular relevance in this case, where Appellant baited Ms. BL into trying to punch him. After dodging Ms. BL's swing, Appellant grabbed her by the neck and hit her in the face, and then allowed Ms. BL to be arrested for the fray. In other words, Appellant's jailhouse comments effectively communicated not remorse for his offenses, but rather, his clear willingness to do the exact same thing again. That Appellant was on notice his calls were being monitored and recorded evidences a notable disregard for the seriousness of his offenses.

Even when relevant, evidence may be excluded under Mil. R. Evid. 403 when its probative value is substantially outweighed by the danger of such concerns as unfair prejudice, undue delay, or needlessly presenting cumulative evidence. We see little danger of Appellant being unfairly prejudiced in this military judge-alone court-martial. Indeed, the military judge stated on the record that she would not consider any references Appellant made to uncharged misconduct, and that she was solely considering Appellant's general attitude towards his offenses and offenses similar to his. While Appellant's recorded statements were prejudicial to his case in that they undermined his attempt to portray himself as reflective and remorseful to the military judge, we do not find their admission to be unfairly prejudicial. To the contrary, his statements provided the best evidence of his true feelings, which the military judge was justified in considering as she fashioned an appropriate sentence. We conclude the military judge did not abuse her discretion in admitting the recorded conversations, and we do not grant Appellant any relief.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court