11-5115-cr
United States v. Dupree

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

August Term 2012

(Argued: August 30, 2012          Decided: January 28, 2013)

No. 11-5115-cr

———————————————————

United States of America,
                                            *Appellant*,

-v.-

COURTNEY DUPREE,
                                            *Defendant-Appellee*,

THOMAS FOLEY, RODNEY WATTS,
                                            *Defendants*.

———————————————————

Before: WINTER, RAGGI, and LIVINGSTON, *Circuit Judges*.

Appeal from an order of the United States District Court for the Eastern District of New York (Matsumoto, *J.*) denying the government's motion *in limine* to admit a state court order as evidence of defendant's state of mind. The district court concluded that the court order was hearsay not admissible within any exception. Additionally, it held that, even if the order were admissible, it would exclude the order under Federal Rule of Evidence 403 because the dangers of

unfair prejudice and confusion of issues substantially outweigh the order's probative value. Because the government is seeking to admit the state court order for a non-hearsay purpose and because the district court failed to consider the order's probative value if offered to show the defendant's knowledge, we vacate the district court's order and remand for further proceedings consistent with this opinion.

MICHAEL YAEGER (Peter A. Norling, *on the brief*), Assistant United States Attorneys, *on behalf of* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, N.Y., *for Appellant*.

MEENA SINFELT (Roscoe C. Howard, Jr., Leasa W. Anderson, *on the brief*), Andrews Kurth LLP, Washington, D.C., *for Defendant-Appellee*.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

The government appeals from a November 23, 2011 order of the United States District Court for the Eastern District of New York (Matsumoto, *J.*) denying its motion *in limine* to admit a state court temporary restraining order as evidence against Defendant-Appellee Courtney Dupree. The government argues that it is not seeking to admit the order for the truth of any assertion it may contain, but only as evidence that Dupree knew of, and intended to violate, a contractual obligation to maintain funds at Amalgamated Bank when he executed a series of withdrawals and money transfers that deprived the Bank of property to which it was entitled in alleged violation of 18 U.S.C. § 1344.

2

Because the government is seeking to admit the state court order for a non-hearsay purpose and because the district court's analysis pursuant to Federal Rule of Evidence 403 did not account for the order's probative value if offered to show knowledge, we vacate the district court's order and remand for the district court to conduct a Rule 403 analysis consistent with this opinion.

## BACKGROUND

Defendant-Appellee Courtney Dupree ("Dupree") is the former Chief Executive Officer and President of GDC Acquisitions ("GDC"), a holding company which owns several subsidiary companies. In 2008, Dupree negotiated a Credit Agreement between Amalgamated Bank ("Amalgamated"), GDC, and three GDC subsidiaries. The Credit Agreement provided the GDC subsidiaries a term loan and revolving lines of credit worth $21 million in total. The loans were secured in part with the subsidiaries' accounts receivable and bank deposits. The accompanying Security Agreement included the accounts receivable and deposits in its definition of collateral, and the Credit Agreement itself required the subsidiaries to maintain operating accounts at Amalgamated and to deposit their revenues into those accounts.

On July 23, 2010, Thomas Foley, GDC's Chief Operating Officer and outside counsel, Rodney Watts, GDC's Chief Financial Officer and Chief Investment Officer, and Dupree were arrested for bank fraud in connection with

3

the 2008 Credit Agreement. The government alleged that Dupree and his codefendants fraudulently secured credit loans from Amalgamated by intentionally inflating the subsidiaries' accounts receivable. The government also alleged that defendants further defrauded Amalgamated by having GDC covertly purchase another company in violation of the Credit Agreement.

On the day of the arrests, Amalgamated sent Dupree a letter informing him that it considered the loan to be in default, and that it was exercising its right under the Credit Agreement to accelerate the loan and demand payment in full of the roughly $18 million outstanding balance. Not convinced that GDC would adhere to the terms of the Credit Agreement, including the requirement that the subsidiaries maintain their accounts at the Bank, Amalgamated brought suit for breach of the Credit Agreement and sought a temporary restraining order in New York County Supreme Court that would, *inter alia*, enjoin GDC, Dupree, and the subsidiaries, among others, from removing any assets required to be maintained at the Bank other than in the ordinary course of business.

On August 4, 2010, New York Supreme Court Justice Shirley Kornreich issued the requested restraining order ("the Order" or "the August 4 Order"). In relevant part, the Order "temporarily restrained and enjoined [GDC, Dupree, and the three subsidiaries, among others] from moving, removing, transferring,

encumbering or otherwise taking any further action to the detriment of plaintiffs with respect to any assets of [GDC and its subsidiaries], including the Collateral . . . other than in the ordinary course of business."[1] The Order also required "[a]ll collection" to be deposited into an account at Amalgamated Bank.

As relevant here, the grand jury returned a superseding indictment on March 25, 2011. While the first four counts of this indictment stemmed from material misrepresentations made on the loan application and actions taken prior to Dupree's arrest, the fifth count was directed solely at Dupree and arose from his course of conduct after the August 4 Order issued. The government alleges that Dupree knew that the Credit Agreement provided Amalgamated a security interest in the subsidiaries' deposits and that he knowingly and intentionally executed a scheme to defraud Amalgamated of this interest in violation of 18 U.S.C. § 1344. Dupree's alleged fraudulent scheme consisted of converting one of the subsidiary company's revenues for his own personal use, either by withdrawing money in cash from the subsidiary's funding account or by transferring money from that funding account to his personal accounts, all without giving notice to Amalgamated. All told, the government alleges that Dupree converted approximately $331,000 to his personal use in the period after

---

[1] The state court action was subsequently stayed. The temporary restraining order remains in effect.

his arrest, using the funds to pay for rent, a car lease, various mortgages, and other expenses.

Dupree moved to dismiss Count Five of the superseding indictment, arguing that the government relied on an alleged violation of the August 4 Order in asserting that he had committed bank fraud, which was not a proper basis on which to ground Section 1344 liability. The district court agreed, concluding that bank fraud "cannot be premised solely on a violation of a state court order" and that because Count Five "allege[d] only that defendant Dupree defrauded Amalgamated via the state court's order," the Count was insufficiently pled. The district court dismissed Count Five without prejudice and with leave to refile, indicating that a bank fraud charge could properly be premised on a scheme to evade the Credit Agreement's provision obligating the subsidiaries "to maintain operating accounts with, and deposit all of their revenue with Amalgamated." The government did not appeal the dismissal of Count Five, but rather sought and obtained a second superseding indictment in which Count Five was modified specifically to reference this provision in the Credit Agreement.

On October 3, 2011, the government filed a motion in *limine* seeking, *inter alia,* to admit the August 4 Order as evidence that Dupree had knowledge of his obligations under the Credit Agreement and that he intended to evade these obligations and to defraud Amalgamated when he executed his withdrawals and

transfers. The district court denied this motion, holding the Order was inadmissible hearsay because the government was seeking to introduce the Order for its truth—in the district court's view, to show that the Order created an independent obligation to maintain the accounts at Amalgamated. The district court also noted that even if the August 4 Order were admissible under a hearsay exception, the court would still exclude it under Federal Rule of Evidence 403 on the ground that the dangers of unfair prejudice and confusion of issues from its admission substantially outweigh its probative value. The government timely filed this interlocutory appeal pursuant to 18 U.S.C. § 3731, divesting the district court of its jurisdiction over the fifth count of the second superseding indictment. The case proceeded to trial as to Dupree on the remaining four counts and he was convicted on each of them.

Because we conclude that the August 4 Order is not hearsay and is probative of Dupree's state of mind at the time he allegedly diverted funds the Credit Agreement required to be maintained at Amalgamated, we vacate the district court's order and remand for the district court to conduct a Rule 403 balancing inquiry consistent with this opinion.

## DISCUSSION

We review a district court's evidentiary rulings deferentially, reversing only for abuse of discretion. *United States v. Quinones*, 511 F.3d 289, 307 (2d Cir.

7

2007). A district court abuses its discretion when "(1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001).

## 1. Waiver

As a threshold matter, Dupree contends that the government failed to argue that the August 4 Order is admissible non-hearsay evidence before the district court, thereby waiving this claim on appeal. As a general rule, we will not consider matters raised for the first time on appeal. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 527 (2d Cir. 1990). Here, however, the government's motion *in limine* asserted that it was seeking to admit the August 4 Order "to prove Dupree's knowledge," and not for its truth. While the government also cited Federal Rule of Evidence 803(8), which provides a hearsay exception for some public records, and its motion papers are not a model of clarity in assessing the Rule 803(8) argument in the alternative, the government's papers specifically cite those portions of the district court's opinion dismissing Count Five as originally pled that note the August 4 Order "is potentially relevant to show defendant Dupree's knowledge and intent to violate

the Agreement to maintain all operating accounts at the Bank and deposit all of the subsidiaries' revenue at Amalgamated." While it is perhaps understandable that the government's position might have been misconstrued, we conclude that the argument was not waived. The government properly raised the issue below, and Dupree's waiver argument fails.

**2. Hearsay**

Dupree next argues that, in any event, the August 4 Order constitutes inadmissible hearsay under the Federal Rules of Evidence, and thus the district court's order excluding it should be affirmed. We disagree.

The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is admissible only if it falls within an enumerated exception. *Id.* 802. However, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." *Id.* 801(c) advisory committee's note. Thus, a statement offered to show its effect on the listener is not hearsay. *Id.*; *see also George v. Celotex Corp.*, 914 F.2d 26, 30 (2d Cir. 1990) ("To be sure, an out of court statement offered not for the truth of the matter asserted, but merely to show that the defendant was on notice of a danger, is not hearsay.").

Here, the Order consists primarily of imperative statements and provides in relevant part as follows:

> The Borrower Defendants and the Individual Defendants, and all persons or entities controlled by any of them, directly or indirectly, are temporarily restrained and enjoined from moving, removing, transferring, encumbering or otherwise taking any further action to the detriment of [Amalgamated Bank] with respect to any assets of the Borrower Defendants, including the Collateral . . . other than in the ordinary course of business . . . ."

The Order identifies GDC and its various subsidiaries as the "Borrower Defendants" and Dupree as one of the four "Individual Defendants." It also specifically requires "[a]ll collection" to be deposited into Amalgamated Bank.

Dupree contends that the August 4 Order is proffered "for its truth"—in his view, to show that the Order created an obligation on his part to maintain and deposit funds into the accounts at Amalgamated, independent of his obligations under the Credit Agreement. He contends, further, that such evidentiary use of the Order would require the jury to determine whether he violated its terms and that "a jury should not be allowed to stand in the place of the state court judge to make such a finding." Appellee's Br. at 16. We disagree.

At the start, whether the August 4 Order imposed legal obligations on Dupree is not a question directly presented here since, pursuant to the government's theory, the Order's relevance lies not in its legal effect (the Credit Agreement having created the Amalgamated interest allegedly defrauded by

10

Dupree), but in the fact that the Order issued in connection with Amalgamated's suit against Dupree and in the fact that Dupree had knowledge of the Order. Even if the Order's relevance *did* lie in its legal effect, moreover, no hearsay problem would ensue, as the question whether a court's command imposes legal obligations on a party is outside the hearsay rule's concerns. *See* Fed. R. Evid. 801(c) advisory committee's note (explaining that verbal acts, meaning statements affecting the legal rights of parties, are excluded from the definition of hearsay); *see also United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004) ("A prior judgment is not hearsay . . . to the extent that it is offered as legally operative verbal conduct that determined the rights and duties of the parties.").

Even assuming, moreover, that the August 4 Order, as a series of imperative commands, *could* be offered for the truth of some assertion that it implies—as might be the case, for instance, if the Order were offered to show that Amalgamated Bank exists—the government here does not proffer the August 4 Order for any such assertion. Instead, as the government aptly argues, the significance of the Order lies in the fact that it issued—making it less likely that Dupree, aware of the August 4 Order, could be *unaware* of relevant provisions in the Credit Agreement on which it was premised and that he allegedly disregarded in diverting funds to his personal use. The government maintains that given the Order's timing—coming on the heels of Dupree's arrest

11

and Amalgamated's acceleration of the loan—and the Order's posture—resulting from Amalgamated's suit to enforce its rights under the Credit Agreement—a jury could infer that its issuance served as a reminder to Dupree of his obligations under the Credit Agreement to "maintain all [the subsidiaries'] operating accounts at the Bank" and to "deposit all of [the subsidiaries'] revenue, upon receipt, into an operating account at the Bank." The government argues that such a reminder, coming two years after Dupree signed the Credit Agreement, makes it less likely that Dupree's conduct with regard to the allegedly diverted funds could be an innocent mistake—a line of reasoning, it contends, that does not rely on the truth of any matter asserted in the Order. We agree.

We have repeatedly held that a statement is not hearsay where, as here, it is offered, not for its truth, but to show that a listener was put on notice. *See George*, 914 F.2d at 30; *see also United States v. Ansaldi*, 372 F.3d 118, 130 (2d Cir. 2004) (holding that an FDA document describing conversion of drug when ingested was not hearsay and was properly admitted to show defendants knew they were selling a controlled substance). Here, a jury could infer that given the August 4 Order's timing, posture, and language, Dupree knew of his obligations under the Credit Agreement and further knew that he was depriving Amalgamated of its property interests when he allegedly withdrew and

12

transferred money for his personal use in violation of the Credit Agreement's terms. Moreover, a jury could draw this inference without deciding whether the August 4 Order itself created any obligations that Dupree subsequently violated, and without relying on the truth of any assertion that the August 4 Order might contain.[2] Such use of the August 4 Order does not implicate the hearsay rule, and the district court erred in concluding to the contrary.

**3. Rule 403**

The district court also determined that it would exclude the August 4 Order pursuant to Rule 403 even if, as we have concluded, the Order is proffered for a non-hearsay purpose. A district court may exclude relevant evidence pursuant to Rule 403 only "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. A court should consider the possible effectiveness of a jury instruction and the availability of other means of proof in making a Rule 403 determination. *Id.* advisory committee's note. We defer to a district court's decision to exclude or admit evidence under this rule and

---

[2] Given this conclusion, we need not address Dupree's contentions that a jury "should not be allowed" to determine whether he violated the terms of the August 4 Order. We note, however, that to the extent Dupree relies on *United States v. Barnett*, 376 U.S. 681, 697–700 (1964) (concerning the scope of an alleged contemnor's right to jury trial in the adjudication of his contempt) to argue that jury consideration of this issue would be improper, the citation is inapposite.

reverse only for abuse of discretion. *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006).

Here, in conducting its Rule 403 balancing inquiry, the district court failed to consider the probative value of the August 4 Order on the question whether Dupree was aware of his obligations to Amalgamated under the Credit Agreement when he improperly withdrew and diverted money from the Amalgamated accounts. Instead, the district court misconstrued the government's position. The court concluded that the Order was proffered to show that the Order itself imposed a legal obligation on Dupree to deposit the relevant funds at Amalgamated, and that such use of the Order is of little probative worth, since "it is not necessary for the jury to find a violation of the August 4 Order to convict Dupree of Count Five." This was error, requiring the district court's order to be set aside.

As already noted, the August 4 Order is offered to show Dupree's knowledge and intent at the time he obtained the relevant funds. Dupree has never conceded that he was aware that Amalgamated had an interest pursuant to the Credit Agreement in the funds he allegedly diverted to his own use. Dupree's knowledge and intent may thus play a central role in the trial, and the August 4 Order may be of significant importance by "tend[ing] to show that the defendant's conduct was not merely a technical oversight but . . . a deliberate

theft." Appellant's Br. at 25. The district court committed legal error in not considering the Order's probative value on Dupree's state of mind. *Cf. United States v. Pepin*, 514 F.3d 193, 207–08 (2d Cir. 2008) (holding that the district court abused its discretion under Rule 403 when it excluded evidence of post-mortem dismemberment probative of defendant's state of mind). Given its relevance, the August 4 Order may properly be excluded only if its probative value in shedding light on Dupree's state of mind is substantially outweighed by the dangers of which Rule 403 warns. *See* Fed. R. Evid. 403 (listing as possible dangers "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence"). The district court noted that a jury might place undue emphasis on the Order simply because a judge issued it, and that introducing the Order might confuse the issues and mislead the jury. However, we have noted that such dangers can often be cured by careful limiting instructions, *see, e.g.*, *United States v. Mercado*, 573 F.3d 138, 142 (2d Cir. 2009) (affirming decision to admit potentially prejudicial evidence where the district court "gave several careful instructions to the jury regarding what inferences it could draw from the admitted evidence"); *see also United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006) ("[T]he law recognizes a strong presumption that juries follow limiting instructions."), and we see no basis on the present record for concluding that such instructions would be ineffective

here. Nevertheless, because it is for the district court in the first instance to consider this question, we vacate and remand so that the district court can conduct a Rule 403 analysis consistent with this opinion.

## CONCLUSION

For the foregoing reasons, we vacate the district court's order and remand the case for further proceedings.