24-2328-cr
*United States v. Lingat*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

      At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of July, two thousand twenty-five.

PRESENT:
> JOSEPH F. BIANCO,
> STEVEN J. MENASHI,
> EUNICE C. LEE,
>      *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

     *Appellee,*

    v.                                24-2328-cr

JOSEPH EUGENE LEMAY, AKA
GENE LEMAY,

     *Defendant,*

JOEL LINGAT,

     *Defendant-Appellant.*

_____

FOR APPELLEE:                           TIMOTHY V. CAPOZZI, Assistant United States Attorney (Jilan J. Kamal, Steven J. Kochevar, and Stephanie Simon, Assistant United States Attorneys, *on the brief*), *for* Matthew Podolsky,

Acting United States Attorney for the Southern District of New York, New York, New York.

FOR DEFENDANT-APPELLANT:     JAMES J. MAHON (Samantha A. Lesser, *on the brief*), Becker New York, P.C., New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Mary Kay Vyskocil, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on August 21, 2024, is **AFFIRMED**.

Defendant-Appellant Joel Lingat appeals from the district court's judgment of conviction entered after a jury trial at which he was found guilty of conspiracy to defraud the Internal Revenue Service ("IRS"), in violation of 18 U.S.C. § 371. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## BACKGROUND

Lingat's conviction arose from his alleged participation, as the head bookkeeper of a moving company named Moishe's Moving Systems, LLC ("Moishe's Moving" or the "Company"), in an unlawful scheme to defraud the IRS by evading the Company's tax obligations. The Second Superseding Indictment (the "Indictment") alleged that, from approximately 2010 to December 2016, Moishe's Moving defrauded the United States by paying its movers off-the-books, without making any payroll tax contributions, as part of a scheme to avoid paying taxes. The Indictment further alleged that the scheme was executed through the use of sham labor companies, with nominal owners, that falsely appeared to employ the laborers, who were in fact under the direction and control of Moishe's Moving. Lingat, along with his co-defendant Joseph

2

Eugene Lemay, allegedly directed and oversaw these unlawful practices.

Prior to trial, the government filed a motion *in limine* seeking to introduce, *inter alia*: (1) evidence concerning the origins of the scheme, including evidence demonstrating that Moishe's Moving's decades-long pattern of tax evasion began years earlier than the 2010–2016 timeframe charged in the Indictment; and (2) testimony from cooperating witness Nissim Fadida, the Operations Manager for Moishe's Moving, that Yaron Hister—an accountant for Moishe's Moving—told Fadida, in approximately 2014, that Lingat received payments of $500 per week through checks issued by the sham labor companies to a fictitious individual, "Norman Hines." Lingat opposed the motion. The district court granted the motion to admit the pre-2010 evidence of the tax fraud scheme, finding that it was likely admissible either as direct evidence of the charged offense or under Federal Rule of Evidence 404(b) and that it was not unfairly prejudicial under Rule 403. *See United States v. Lingat*, No. 21-cr-573 (MKV), 2024 WL 1051633, at *2–5 (S.D.N.Y. Mar. 11, 2024) ("*Lingat I*"). The district court also concluded that "admitting evidence of the corporate tax scheme prior to the charged period would not constitute an unconstitutional constructive amendment of the Indictment." *Id*. at *3. The district court reserved decision until trial as to whether Fadida's testimony regarding Hister's out-of-court statements to Fadida were admissible as co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E).

At trial, Lingat did not further object to the admission of the pre-2010 evidence, nor did he request that the district court provide a limiting instruction to the jury. As to the anticipated testimony by Fadida regarding Hister's out-of-court statements, the government again sought a ruling from the district court during the trial, before calling Fadida. After reviewing additional submissions from the parties on this issue, the district court concluded that the statements were admissible under Rule 801(d)(2)(E).

At the close of the government's case, Lingat moved for a judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29, arguing that the evidence regarding the conspiracy charge against him under Section 371 (commonly referred to as a "*Klein* conspiracy," as discussed below) was legally insufficient because the statute did not cover the alleged conduct and the Indictment failed to separately charge him with the underlying substantive offense of tax evasion. The district court denied Lingat's motion. The jury subsequently found Lingat guilty of the sole count in the Indictment.[1]

After trial, Lingat renewed his motion for a judgment of acquittal on the same grounds he raised in his initial oral motion during trial. The district court again denied the motion. *See generally United States v. Lingat*, No. 21-cr-573 (MKV), 2024 WL 3594565 (S.D.N.Y. July 30, 2024) ("*Lingat II*"). On August 19, 2024, the district court sentenced Lingat principally to 24 months' imprisonment, to be followed by a two-year term of supervised release. This appeal followed.

**DISCUSSION**

On appeal, Lingat asserts that his conviction should be overturned for three reasons: (1) recent Supreme Court decisions concerning the application of general criminal statutes support the view that Section 371 does not criminalize the alleged conduct for which he was convicted; (2) the admission of evidence demonstrating that the alleged conspiracy began many years before the timeframe alleged in the Indictment was erroneous, as it constructively amended the Indictment and, in any event, was confusing and unfairly prejudicial under Rule 403; and (3) the district court erroneously admitted the statements of an alleged co-conspirator under Rule 801(d)(2)(E).

"We review *de novo* preserved claims regarding the sufficiency of an indictment and the

---

[1] Co-defendant Lemay also was found guilty of the Section 371 charge.

4

interpretation of a federal statute, as well as preserved claims regarding the interpretation of a statute raised in the context of a Rule 29 motion for a judgment of acquittal." *United States v. Atilla*, 966 F.3d 118, 130 (2d Cir. 2020) (alteration adopted) (internal quotation marks and citations omitted). We similarly review *de novo* claims of constructive amendment to the indictment. *United States v. Pierce*, 785 F.3d 832, 844 (2d Cir. 2015). Finally, "[w]e review a district court's evidentiary rulings deferentially, reversing only for abuse of discretion," *United States v. Dupree*, 706 F.3d 131, 135 (2d Cir. 2013), which requires a determination "that the challenged evidentiary rulings were arbitrary and irrational," *United States v. Quinones*, 511 F.3d 289, 307–08 (2d Cir. 2007) (internal quotation marks and citation omitted).

## I.       Challenge to the Scope of Section 371

"Section 371 prohibits two types of conspiracies: The 'offense clause' makes it unlawful to conspire 'to commit any offense against the United States,' while the 'defraud clause' prohibits conspiracies 'to defraud the United States, or any agency thereof in any manner or for any purpose.'" *Atilla*, 966 F.3d at 130 (quoting 18 U.S.C. § 371). To prove a conspiracy under the "defraud clause," the government must establish "(1) that [the] defendant entered into an agreement (2) to obstruct a lawful function of the government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy." *United States v. Ballistrea*, 101 F.3d 827, 832 (2d Cir. 1996) (alteration adopted) (internal quotation marks and brackets omitted). As relevant to this appeal, a conspiracy under the "defraud clause" that focuses on defrauding the IRS in its efforts to assess and collect taxes is commonly referred to as a "*Klein* conspiracy," named after our decision in *United States v. Klein,* 247 F.2d 908 (2d Cir. 1957).

On appeal, Lingat argues that the *Klein* conspiracy doctrine, which "has been utilized to prosecute cases where the alleged criminal conduct constitutes obstruction of the administration of the Internal Revenue Code," is an "overly broad interpretation of [a] general criminal statute[]."

Appellant's Br. at 5–6. Lingat further argues that, in order to narrow the statute's scope, Section 371 "should only be applied to cover conspiracies to deprive the United States of money or property, rather than mere obstruction of the administration of the Internal Revenue Code." *Id.* at 9. As set forth below, we disagree and conclude that the district court correctly held that Lingat's legal challenge to Section 371 is foreclosed by binding precedent.

We have repeatedly affirmed the validity of the *Klein* conspiracy doctrine under the "defraud clause" of Section 371. More specifically, we have explained that, "[n]otwithstanding [certain] infirmities in the history and deployment of the statute," Section 371 should be broadly interpreted to reach "any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government," and "is not confined to fraud as that term has been defined in the common law." *United States v. Coplan*, 703 F.3d 46, 61 (2d Cir. 2012) (internal quotation marks and citation omitted); *accord Atilla*, 966 F.3d at 130. As we have explained, that interpretation of *Klein* conspiracies "derives from and falls within the scope of the law of the Circuit" and is "itself grounded on long-lived Supreme Court decisions," which recognize the scope of Section 371 as intentionally broad. *Coplan*, 703 F.3d at 62; *see Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924) (concluding that, under Section 371, "[t]o conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions *by deceit, craft or trickery, or at least by means that are dishonest*" (emphasis added)); *Haas v. Henkel,* 216 U.S. 462, 479 (1910) (holding that Section 371 is "broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government"). Indeed, in *Klein*, we relied upon *Hammerschmidt* and upheld a conviction under Section 371 for "conspiracy to obstruct the Treasury Department in its collection

6

of revenue," 247 F.2d at 910, explaining that the statute "not only includes the cheating of the Government out of property or money, but 'also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest,'" *id*. at 916 (quoting *Hammerschmidt*, 265 U.S. at 188).

We find no basis to depart from this binding precedent as to the application of Section 371 to Lingat's conduct in this case. *See United States v. Barrett*, 102 F.4th 60, 82 (2d Cir. 2024) ("[A] panel of [the Second Circuit] is bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our court or by the Supreme Court." (alteration adopted)); *see also Atilla*, 966 F.3d at 131 (emphasizing that we are "bound to follow both the law of the Circuit and long-lived Supreme Court decisions that have definitively adopted and reaffirmed the expansive reading of § 371 given by courts" (internal quotation marks and citation omitted)); *Coplan*, 703 F.3d at 62 (rejecting challenge to the scope of Section 371 and emphasizing that the defendant's argument that we should "'pare' the body of § 371 precedent 'down to its core' . . . [is] properly directed to a higher authority" because "[a]s an intermediate appellate court, we are bound to follow the dictates of Supreme Court precedents" (internal citation omitted)).

To be sure, "[t]here is an exception to this general rule when an intervening Supreme Court decision . . . casts doubt on our controlling precedent." *United States v. Afriyie*, 27 F.4th 161, 168 (2d Cir. 2022) (internal quotation marks and citation omitted). However, we find unpersuasive Lingat's contention that recent Supreme Court cases have called into question the validity of *Klein*. As the district court correctly noted, "[a]lthough the Supreme Court has limited the scope of *some* federal statutes," none of those decisions cited by Lingat "concern or even discuss Section 371" and Lingat "provide[s] no explanation as to how [those] cases . . . could have any bearing on" our jurisprudence with respect to the issue before us. *Lingat II*, 2024 WL 3594565, at *5; *see, e.g.*,

7

*Kelly v. United States*, 590 U.S. 391 (2020) (clarifying the scope of the term "property" in the federal wire fraud statute, 18 U.S.C. § 1343, and the federal program fraud statute, 18 U.S.C. § 666(a)(1)(A)); *McDonnell v. United States*, 579 U.S. 550 (2016) (interpreting the term "official acts" as found in the federal bribery statute 18 U.S.C. § 201(a)(3)); *Cleveland v. United States*, 531 U.S. 12 (2000) (defining "fraud" as contained in 18 U.S.C. § 1341). Equally misplaced is Lingat's reliance on the Supreme Court's recent decisions in *Fischer v. United States*, 603 U.S. 480 (2024) and *Trump v. United States*, 603 U.S. 593 (2024). In particular, *Fischer* concerned the scope of 18 U.S.C. § 1512(c)(2) and, similar to the aforementioned case authority on which Lingat relies, does not address Section 371. *Trump* is similarly inapposite—that case related not to the scope of Section 371, but rather the president's immunity from prosecution under that statute for his official acts in office. In fact, in its brief discussion of Section 371, the Court reemphasized that it is "a broadly worded criminal statute that can cover 'any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government.'" *Trump*, 603 U.S. at 640 (quoting *United States v. Johnson*, 383 U.S. 169, 172 (1966)).

Finally, we are similarly unpersuaded by Lingat's argument that Congress's enactment of 26 U.S.C. § 7212(a), which criminalizes conduct by which a person "corruptly or by force or threats of force . . . obstructs or impedes, or endeavors to obstruct or impede, the due administration" of the Internal Revenue Code, precludes the application of the earlier-enacted general conspiracy statute, Section 371, to his conduct. It is well-settled that a conspiracy is a crime separate and apart from the substantive offense that is the object of the conspiracy. *See United States v. Jimenez Recio*, 537 U.S. 270, 274 (2003) ("[A conspiratorial] agreement to commit an unlawful act is a distinct evil, which may exist and be punished whether or not the substantive crime ensues." (internal quotation marks and citation omitted)); *see also United States*

8

*v. Crosby*, 314 F.2d 654, 657 (2d Cir. 1963) ("[S]eparate sentences may be imposed for violating a criminal statute and for conspiring to violate it."). As the district court noted, "for more than one hundred years, the Supreme Court and the Second Circuit have adhered to the view that the Government may charge and prove a conspiracy to defraud an agency of the United States under 18 U.S.C. § 371 without charging or proving any separate or overlapping substantive violation of a criminal statute." *Lingat II*, 2024 WL 3594565, at *3 (collecting cases). Moreover, although Lingat seeks to rely upon the Supreme Court's decision in *Marinello v. United States*, 584 U.S. 1 (2018), as we have explained, *Marinello* lends no support to his legal challenge to Section 371 because, in *Marinello*, "the Supreme Court analyzed 26 U.S.C. § 7212(a)'s unique text, context, and history—which are wholly unrelated to § 371's defraud clause." *Atilla*, 966 F.3d at 131.

In sum, we decline to adopt Lingat's interpretation of Section 371 and find no basis to disturb our longstanding precedent that the *Klein* conspiracy doctrine remains legally valid and supports his conviction under the facts of this case.

## II. Admission of Background Evidence of Pre-2010 Use of Labor Companies

Lingat argues that the district court abused its discretion in admitting evidence of Moishe's Moving's use of sham labor companies to commit tax evasion prior to the time period charged in the Indictment. Specifically, Lingat asserts that the introduction of evidence that Moishe's Moving began using these labor companies as early as the 1980's constituted an unconstitutional constructive amendment of the Indictment. Lingat alternatively asserts that the evidence should have been excluded as unfairly prejudicial pursuant to Rule 403.

"A constructive amendment occurs when the charge upon which the defendant is tried differs significantly from the charge upon which the grand jury voted." *United States v. Dove*, 884 F.3d 138, 146 (2d Cir. 2018). However, "[n]ot every alteration of an indictment . . . rises to the level of a constructive amendment." *Id*. For a defendant to prevail on such a claim, he "must

demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir. 2003) (quoting *United States v. Frank*, 156 F.3d 332, 337 (2d Cir. 1998)). The charge has been so altered "either where (1) an additional element, sufficient for conviction, is added, or (2) an element essential to the crime charged is altered." *Dove*, 884 F.3d at 146 (internal citations omitted). "We undertake this inquiry mindful that courts have constantly permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial." *United States v. Khalupsky*, 5 F.4th 279, 293 (2d Cir. 2021) (internal quotation marks and citation omitted). "The core of criminality of an offense involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls outside that purview." *Id*. (citation omitted).

Here, we conclude that there was no constructive amendment to the Indictment when the district court admitted evidence regarding the origin and longstanding operation of the unlawful tax evasion scheme at Moishe's Moving prior to 2010, based upon its determination that such evidence would "provide significant background demonstrating the circumstances surrounding the inception of the scheme." *Lingat I*, 2024 WL 1051633, at *3 (alteration adopted) (internal quotation marks and citation omitted). We have emphasized that a district court may "admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment." *United States v. Coonan,* 938 F.2d 1553, 1561 (2d Cir. 1991) (internal quotation marks and citation omitted). Indeed, such background evidence may be pertinent to demonstrate "the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *Id*.

10

(quoting *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988)). Accordingly, where the limited pre-2010 evidence at Lingat's trial served merely to provide background about the charged scheme and "was wholly consistent with the terms of the superseding indictment voted on by the grand jury," we discern no basis to conclude that there was a constructive amendment to the indictment based upon the jury's consideration of that evidence. *Dove*, 884 F.3d at 149. Moreover, the lack of any constructive amendment is further supported by the district court's jury instruction, which clearly stated that, in order to convict, the jury was required to find that the conspiracy existed during the 2010–2016 timeframe charged in the Indictment. We find that instruction to be "more than sufficient to guard against constructive amendment of the indictment." *United States v. Clemente*, 22 F.3d 477, 483 (2d Cir. 1994).

We are equally unpersuaded by Lingat's alternative argument that, even if the admission of the evidence did not constructively amend the Indictment, the evidence should have nonetheless been excluded under Rule 403 due to its potential to provoke unfair prejudice and confuse the jury. In conducting the requisite balancing under Rule 403, the district court found that "because the charged conduct is simply a continuation of the pre-2010 conduct, such evidence is highly probative of the charged conduct because it directly explains the origins and design of the charged conduct and demonstrates the defendants' longstanding knowledge of and intent to engage in the charged conduct." *Lingat I*, 2024 WL 1051633, at *5 (internal quotation marks and citation omitted). The district court further noted that "the pre-2010 conduct is not 'unduly prejudicial' to the defendant[] because . . . it is merely a continuation of the same charged conduct and therefore cannot be more sensational or disturbing than the charged conduct." *Id.*; *see United States v. Rosemond*, 958 F.3d 111, 125 (2d Cir. 2020). Moreover, the district court found that admission of the pre-2010 evidence would not confuse the jury, but rather, "excluding evidence prior to 2010

11

may lead to jury confusion" because such evidence "may be necessary to provide context for the jury." *Lingat I*, 2024 WL 1051633, at \*3. In light of that reasoning, Lingat has failed to persuasively argue how the district court abused its discretion with respect to its Rule 403 determination. In short, because the district court "conscientiously balanced the proffered evidence's probative value with the risk for prejudice" and jury confusion, and its conclusion was not "arbitrary or irrational," *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006), we find no basis to disturb the district court's exercise of its discretion in admitting the pre-2010 evidence under Rule 403.

III. **Admission of Co-Conspirator Statements**

Lingat also challenges the district court's admission, under Rule 801(d)(2)(E), of out-of-court statements made by Hister to cooperating witness Fadida concerning Lingat's alleged concealment of payments through the use of a fictious name in 2014.

A statement is not hearsay if "[t]he statement is offered against an opposing party" and it is a statement "made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). "To admit a statement under the coconspirator exception to the hearsay definition, a district court must find two factors by a preponderance of the evidence: first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy." *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999) (citation omitted). With respect to the first factor, a "court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself" when "determining the existence and membership of the alleged conspiracy." *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014). As it pertains to the second factor, "[s]tatements in furtherance of a conspiracy prompt the listener . . . to respond in a way that

12

promotes or facilitates the carrying out of a criminal activity." *United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001) (internal quotation marks omitted). Thus, statements satisfy the in-furtherance requirement of Rule 801(d)(2)(E) if they "provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy." *United States v. Maldonado-Rivera*, 922 F.2d 934, 959 (2d Cir. 1990). We review a district court's factual findings regarding the conspiracy for clear error and its decision to admit co-conspirator statements for abuse of discretion. *See Gupta*, 747 F.3d at 124.

Lingat argues that the district court erred in admitting Hister's hearsay statements under Rule 801(d)(2)(E) because Hister was not a co-conspirator and the statements were not made in furtherance of the conspiracy. We disagree.

First, despite Lingat's contention that Moishe's Moving hired Hister for the purpose of conducting an internal audit, there was sufficient evidence adduced at trial to support, by a preponderance of the evidence, the district court's finding that Hister was brought into the conspiracy not to stop the unlawful scheme, but to "clean up [the existing structure] in order to allow new clean, labor companies to continue to operate in furtherance of the conspiracy." App'x at 687. For example, Lingat's co-conspirator, Salman Haim, testified that Hister was tasked with ensuring that the labor companies that were in "good shape . . . [and] continued working . . . [while] the bad ones [he] killed and opened new ones." *Id.* at 290. Haim further testified that, although he and others at Moishe's Moving were initially skeptical of revealing information about the scheme to Hister, they were assured by the owner of Moishe's Moving not to worry because they could "trust him." *Id*. at 288. Moreover, Fadida testified that, following Hister's onboarding, Moishe's Moving continued "to rely on labor companies under a new structure but . . . [with] the

13

same purpose" and continued "to pay manual labor workforce off-the-books." *Id*. at 727.

Second, the district court did not err in finding that the statements at issue were made in furtherance of the conspiracy, in an effort to keep Fadida informed of the status of the scheme. We have repeatedly held that statements "that apprise a coconspirator of the progress of the conspiracy" further the ends of a conspiracy. *United States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987); *see also United States v. Amato*, 15 F.3d 230, 234 (2d Cir. 1994) (statement apprising co-conspirator in loansharking conspiracy of status of loan was made in furtherance of the conspiracy); *United States v. Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989) (statement among conspirators that defendant was receiving proceeds of extortion was in furtherance of conspiracy because it informed conspirators of status of conspiracy). Contrary to Lingat's assertion, the trial evidence sufficiently supported a finding that Hister's statements to Fadida were not "simply idle chatter and/or a narrative of past events," Appellant's Br. at 20, but rather were statements that "serve[d] some . . . purpose in the conspiracy," *United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994). In particular, as the district court noted, the evidence supported a finding that Hister's statements to Fadida "foster[ed] trust and cohesiveness" because Fadida testified that, similar to Lingat, he received monthly checks from one of the labor companies. App'x at 687. At a minimum, Hister's statements to Fadida "inform[ed] [Fadida] as to the progress or status of the conspiracy," by shedding light on the extent and details of the operation. *Maldonado-Rivera*, 922 F.2d at 959.

In sum, we discern no grounds to disturb the district court's determination that Hister's statements to Fadida about Lingat were made in furtherance of the unlawful scheme, of which both Lingat and Hister were members, and were therefore admissible under Rule 801(d)(2)(E).[2]

---

[2] To the extent Lingat also suggests that the admission of Hister's statements violated the Confrontation Clause, that argument is without merit. As we have explained, "the Supreme Court has indicated that

14

\*      \*      \*

We have considered Lingat's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

statements in furtherance of a conspiracy are non-testimonial for purposes of the Confrontation Clause, and are therefore not covered by its protections." *United States v. Shyne*, 617 F.3d 103, 108 (2d Cir. 2010); *see Crawford v. Washington,* 541 U.S. 36, 56 (2004) (noting that most hearsay exceptions "covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy"). This is because ordinarily, such co-conspirator statements are not made in "knowing response[] to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings." *United States v. Saget*, 377 F.3d 223, 228 (2d Cir. 2004) (citing *Crawford*, 541 U.S. at 53 n.4); *but see United States v. Logan,* 419 F.3d 172, 178 (2d Cir. 2005) (acknowledging that "[i]n general, statements of co-conspirators in furtherance of a conspiracy are non-testimonial," but concluding that the co-conspirator statements were testimonial because they were made "in the course of a police interrogation" and the declarants therefore could "reasonably have expected that their statements might be used in future judicial proceedings"). Here, Hister's co-conspirator statements to Fadida were non-testimonial because nothing suggests that Hister would reasonably have anticipated those statements would be used in a future judicial proceeding. *See Saget*, 377 F.3d at 229 (suggesting that the co-conspirator statement was non-testimonial because the declarant "believed that he was having a casual conversation with a friend and potential co-conspirator"). We therefore conclude that those statements are not covered by the Confrontation Clause.